B6 Summary (Form 6 - Summary) (12/07)

# United States Bankruptcy Court
## Central District of California-L.A.

In re   **Mission Real Associates, LLC** _____   Case No.   **2:10-bk-22370-BR** _____

_____ Debtor(s)                               Chapter   **11** _____

## SUMMARY OF SCHEDULES

Indicate as to each schedule whether that schedule is attached and state the number of pages in each. Report the totals from Schedules A, B, D, E, F, I, and J in the boxes provided. Add the amounts from Schedules A and B to determine the total amount of the debtor's assets. Add the amounts of all claims from Schedules D, E, and F to determine the total amount of the debtor's liabilities. Individual debtors also must complete the "Statistical Summary of Certain Liabilities and Related Data" if they file a case under chapter 7,11, or 13.

| NAME OF SCHEDULE | ATTACHED (YES/NO) | NO. OF SHEETS | ASSETS | LIABILITIES | OTHER |
|---|---|---|---|---|---|
| A - Real Property | Yes | 1 | $99,500,000.00 | | |
| B - Personal Property | Yes | 3 | $2,984,985.64 | | |
| C - Property Claimed as Exempt | No | 0 | | | |
| D - Creditors Holding Secured Claims | Yes | 1 | | $57,062,597.00 | |
| E - Creditors Holding Unsecured Priority Claims (Total of Claims on Schedule E) | Yes | 1 | | $0.00 | |
| F - Creditors Holding Unsecured Nonpriority Claims | Yes | 11 | | $36,140,208.68 | |
| G - Executory Contracts and Unexpired Leases | Yes | 270 | | | |
| H - Codebtors | Yes | 1 | | | |
| I - Current Income of Individual Debtor(s) | No | 0 | | | $N/A |
| J - Current Expenditures of Individual Debtor(s) | No | 0 | | | $N/A |
| **TOTAL** | | 288 | $102,484,985.64 | $93,202,805.68 | |

Form 6 - Statistical Summary (12/07)

# United States Bankruptcy Court
## Central District of California-L.A.

In re    **Mission Real Associates, LLC** _____ ,    Case No. ___**2:10-bk-22370-BR**_____

Debtor

Chapter _____**11**_____

# STATISTICAL SUMMARY OF CERTAIN LIABILITIES AND RELATED DATA (28 U.S.C. § 159)

If you are an individual debtor whose debts are primarily consumer debts, as defined in § 101(8) of the Bankruptcy Code (11 U.S.C.§ 101(8)), filing a case under chapter 7, 11 or 13, you must report all information requested below.

☐ Check this box if you are an individual debtor whose debts are NOT primarily consumer debts. You are not required to report any information here.

**This information is for statistical purposes only under 28 U.S.C. § 159.**

**Summarize the following types of liabilities, as reported in the Schedules, and total them.**

| Type of Liability | Amount |
|---|---|
| Domestic Support Obligations (from Schedule E) | |
| Taxes and Certain Other Debts Owed to Governmental Units (from Schedule E) | |
| Claims for Death or Personal Injury While Debtor Was Intoxicated (from Schedule E) (whether disputed or undisputed) | |
| Student Loan Obligations (from Schedule F) | |
| Domestic Support, Separation Agreement, and Divorce Decree Obligations Not Reported on Schedule E | |
| Obligations to Pension or Profit-Sharing, and Other Similar Obligations (from Schedule F) | |
| TOTAL | |

**State the following:**

| | |
|---|---|
| Average Income (from Schedule I, Line 16) | |
| Average Expenses (from Schedule J, Line 18) | |
| Current Monthly Income (from Form 22A Line 12; OR, Form 22B Line 11; OR, Form 22C Line 20 ) | |

**State the following:**

| | | |
|---|---|---|
| 1. Total from Schedule D, "UNSECURED PORTION, IF ANY" column | | |
| 2. Total from Schedule E, "AMOUNT ENTITLED TO PRIORITY" column | | |
| 3. Total from Schedule E, "AMOUNT NOT ENTITLED TO PRIORITY, IF ANY" column | | |
| 4. Total from Schedule F | | |
| 5. Total of non-priority unsecured debt (sum of 1, 3, and 4) | | |

Software Copyright (c) 1996-2010 - Best Case Solutions - Evanston, IL - www.bestcase.com

Best Case Bankruptcy

## GENERAL NOTES TO SCHEDULES OF ASSETS AND
## LIABILITIES AND STATEMENT OF FINANCIAL AFFAIRS

Mission Real Associates, LLC, a Delaware Limited Liability Company (the "Debtor"), submits its Schedules of Assets and Liabilities (the "Schedules") and Statement of Financial Affairs (the "Statement") pursuant to 11 U.S.C. § 521 and Federal Rule of Bankruptcy Procedure 1007.

The Schedules and Statement have been prepared by the Debtor's successor management and are unaudited. While successor management of the Debtor has endeavored to ensure that the Schedules and Statement are accurate and complete based on information that was available at the time of preparation, the subsequent receipt of information may result in material changes in data contained in the Schedules and Statement that would warrant amendment of same. Additionally, while the Debtor has endeavored to file complete and accurate Schedules and Statement, inadvertent errors or omissions may exist. Accordingly, the Debtor reserves the right to amend its Schedules and Statement as necessary or appropriate and expects it will do so as information becomes available.

Unless otherwise stated, the asset and liability data contained in the Schedules and Statement are reflected at net book value as of March 31, 2010, the date the Debtor commenced its chapter 11 case (the "Petition Date"). Actual fair market values may differ materially from book values. The Debtor is still investigating the fair market value of its assets.

The Debtor has endeavored to allocate liabilities between the prepetition and postpetition periods. Additional information may become available that would cause the allocation of liabilities between prepetition and postpetition periods to change. If this occurs, the Debtor will make appropriate amendments to the Schedules and Statement.

Any failure to designate a claim listed on the Debtor's Schedules as "disputed," "contingent" or "unliquidated" does not constitute an admission by the Debtor that such amount is not "disputed," "contingent" or "unliquidated." The Debtor reserves the right to subsequently designate any claim as "disputed," "contingent" or "unliquidated." The Debtor further reserves the rights to dispute, object to, assert counterclaims, rights of setoff, rights of recoupment, or defenses to, subordinate, avoid, and/or obtain reclassification of any claim or any interest in property securing such claim.

The dollar amounts of claims listed may be exclusive of contingent and unliquidated amounts.

The claims of creditors for, among other things, merchandise, goods, services, or taxes may be listed at the lower of the amounts invoiced by such creditor or the amounts entered on the Debtor's books and records and may not reflect credits or allowances due from such creditors to the Debtor. The Debtor reserves all of its rights with respect to any such credits and allowances.

3

The claims that are listed on Schedules D, E and F may not reflect the application of any payments made in respect of such claims following the Petition Date, pursuant to a creditor's right of recoupment or the Court's orders.

The identity of some of the holders of claims might have changed over time due to trading and/or transfer of certain of these claims. The Debtor believes (but is not sure) that the claims against the Debtor were as of the Petition Date held by the entities identified in these Schedules (or affiliates of such entities or beneficial holders for which such entities are nominees or asset managers), in the principal amounts set forth herein, without inclusion of accrued and unpaid interest (unless expressly noted that interest is included).

## Schedule B Disclaimer

Unless otherwise noted, all of the amounts listed on Schedule B represent the value of the Debtor's assets as reflected in the Debtor's books and records. The actual value of the assets listed may differ significantly from the amounts reflected in the Debtor's books and records.

Certain items of equipment, **if any**, are or may be listed herein pursuant to a capital lease. Such designation is not an admission or recognition that such lease is a security agreement, and not a true lease. The Debtor expressly reserves all rights to challenge, on any basis, the nature of such equipment as owned or leased, as the case may be.

5

## GENERAL NOTES REGARDING SCHEDULE D

Subject to the terms of any postpetition cash collateral agreement, the Debtor reserves the right to dispute or challenge the validity of any lien purported to be granted and/or perfected by a secured creditor listed on this Schedule D. The Debtor reserves the right to dispute or challenge the validity, perfection, or immunity from avoidance of any lien purported to be granted or perfected in any specific asset to a secured creditor listed on Schedule D. Moreover, although the Debtor has scheduled secured claims on its Schedule D, the Debtor reserves all rights to dispute or challenge any secured nature of any creditors' claim or the characterization of the structure of any such transaction, or any document or instruction related to such creditor's claim.

Certain of the Debtor's agreements listed on Schedule G may be in the nature of sales agreements or secured financings. Certain creditors might assert that their claims are secured due to a right of reclamation. Such claims, if any, are listed on Schedules F or G, as appropriate. No attempt has been made to identify such agreements for purposes of including them on this Schedule D. The Debtor's failure to designate a claim on this Schedule D as "contingent," "unliquidated" or "disputed" does not constitute an admission by the Debtor that such claim is not contingent, unliquidated, or disputed, and the Debtor reserves the right to dispute, or to assert offsets or defenses to, any claims reflected on this Schedule D as to amount, liability, classification or otherwise and to subsequently designate any such claim as disputed, contingent or unliquidated.

Lessors, utility companies and other parties, which may hold security deposits, have not been listed on Schedule D.

Schedule D is subject to further amendment by the Debtor. The description provided is intended only to be a summary. Reference to the applicable credit agreement and related documents is necessary for a complete description of the collateral and the nature, extent, and priority of any liens. Nothing herein shall be deemed a modification or interpretation of the terms of such agreements.

## GENERAL NOTES REGARDING SCHEDULE F

The claims listed in Schedule F arose or were incurred on various dates. A determination of each date upon which each claim in Schedule F was incurred or arose may be costly and unduly burdensome and no incurrence date is shown where the cost or burden would be significant.

The claims listed on Schedule F are subject to further review, reconciliation and amendment by the Debtor.

For certain trade vendor claims, all or a portion of the claim amounts listed on Schedule F might be an administrative expense priority claim in accordance with section 503(b)(9) of the Bankruptcy Code.

## GENERAL NOTES REGARDING SCHEDULE G

While effort has been made to ensure the accuracy of the Schedule of Executory Contracts and Unexpired Leases, inadvertent errors or omissions may have occurred. The Debtor does not make, and specifically disclaims, any representation or warranty as to the completeness or accuracy of the information set forth herein, or the validity or enforceability of any such contracts, agreements or documents listed herein. The Debtor hereby reserves the right to dispute the validity, status, characterization or enforceability of any such contracts, agreements or leases set forth herein and to amend or supplement this Schedule.

Certain of the contracts, agreements and leases listed on Schedule G may have expired or may have been modified, amended and supplemented from time to time by various amendments, restatements, waivers, estoppel certificates, letters and other documents, instruments and agreements which may not be listed herein. Certain of the real property leases listed on this Schedule G may contain renewal options, guarantees of payment, options to purchase, rights of first refusal, rights to lease additional space and other miscellaneous rights. Such rights, powers, duties and obligations are not set forth on this Schedule G. Certain of the executory agreements may not have been memorialized and could be subject to dispute. Schedule G does not include all equipment and inventory purchase orders. Additionally, the Debtor may be a party to various other agreements concerning real property, such as easements, rights of way, subordination, non-disturbance and attornment agreements, supplemental agreements, amendments/letter agreements, title documents, consents, site plans, maps and other miscellaneous agreements. Such agreements are not set forth on this Schedule G.

Certain of the agreements listed on Schedule G may be in the nature of sales agreements or secured financings. The Debtor reserves all of its rights to dispute or challenge the characterization of any agreements reflected in Schedule G, or any document or instrument related to a creditor's claim.

B6A (Official Form 6A) (12/07)

In re    **Mission Real Associates, LLC**                                    Case No.   **2:10-bk-22370-BR**
                                                                                        Debtor

# SCHEDULE A - REAL PROPERTY

Except as directed below, list all real property in which the debtor has any legal, equitable, or future interest, including all property owned as a cotenant, community property, or in which the debtor has a life estate. Include any property in which the debtor holds rights and powers exercisable for the debtor's own benefit. If the debtor is married, state whether husband, wife, both, or the marital community own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor holds no interest in real property, write "None" under "Description and Location of Property."

Do not include interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.

If an entity claims to have a lien or hold a secured interest in any property, state the amount of the secured claim. See Schedule D. If no entity claims to hold a secured interest in the property, write "None" in the column labeled "Amount of Secured Claim." If the debtor is an individual or if a joint petition is filed, state the amount of any exemption claimed in the property only in Schedule C - Property Claimed as Exempt.

| Description and Location of Property | Nature of Debtor's Interest in Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption | Amount of Secured Claim |
|---|---|---|---|---|
| See attached Legal Description-Bldg Only @ 12121 Wilshire Blvd. Los Angeles, CA 90025 | Tenants In Common | - | 99,500,000.00 | 57,062,597.00 |

| | | | | |
|---|---|---|---|---|
| | Sub-Total > | **99,500,000.00** | (Total of this page) |
| | Total > | **99,500,000.00** | |

  **0**   continuation sheets attached to the Schedule of Real Property

(Report also on Summary of Schedules)

Software Copyright (c) 1996-2010 - Best Case Solutions - Evanston, IL - www.bestcase.com

Best Case Bankruptcy

## EXHIBIT A

PARCEL 1:

LOTS 2 AND 3 IN BLOCK 4 OF TRACT NO. 5908, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 65 PAGE 70 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

PARCEL 2:

DETERMINABLE FEE ESTATE IN AND TO ALL OF THAT CERTAIN REAL PROPERTY SITUATE, LYING AND BEING IN THE CITY AND COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, COMPRISING THE BUILDINGS AND IMPROVEMENTS, NOW OR HEREAFTER ERECTED OR BEING ON THE FOLLOWING DESCRIBED REAL PROPERTY:

LOT 1 IN BLOCK 4 OF TRACT NO. 5908, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 65 PAGES 70 AND 71 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

LOTS 1 AND 2 IN BLOCK 11 OF SAN VICENTE PARK, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 12 PAGES 62 AND 63 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

SUBJECT TO THE LIMITATIONS CONTAINED IN SECTION 3.5 OF THE GROUND LEASE, RECORDED NOVEMBER 7, 1980 AS INSTRUMENT NO. 80-1119584 AS AMENDED.

PARCEL 3:

LOT 1 IN BLOCK 4 OF TRACT NO. 5908, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 65 PAGES 70 AND 71 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

LOTS 1 AND 2 IN BLOCK 11 OF SAN VICENTE PARK, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 12 PAGES 62 AND 63 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

PARCEL 4:

THE SOUTHEASTERLY ONE-HALF OF THE ALLEY IN BLOCK 4 OF TRACT NO. 5908, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS SHOWN ON THE MAP RECORDED IN BOOK 65, PAGES 70 AND 71 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, THAT WOULD PASS WITH A LEGAL CONVEYANCE OF LOTS 1, 2 AND 3 OF SAID BLOCK 4, VACATED BY RESOLUTION TO VACATE NO. 83-21982, RECORDED APRIL 27, 1983 AS INSTRUMENT NO. 83-466467, OFFICIAL RECORDS.

PARCEL 5:

EASEMENTS FOR CERTAIN ENCROACHMENTS PURSUANT TO THE TERMS AND PROVISIONS OF THAT CERTAIN DECLARATION OF EASEMENTS BY MURDOCK-WB ASSOCIATES, A CALIFORNIA GENERAL PARTNERSHIP, DATED SEPTEMBER 24, 1985 AND RECORDED ON OCTOBER 21, 1985 AS INSTRUMENT NO. 85-1236595, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, AS GRANTED IN THAT

Exhibit C-2

CERTAIN DEED RECORDED ON NOVEMBER 8, 1985 AS INSTRUMENT NO. 85-1325654, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

PARCEL 6:

CERTAIN NON-EXCLUSIVE EASEMENTS FOR NECESSARY ANCILLARY USE CUSTOMARY TO A SERVICE DRIVEWAY FOR PICK-UP, DELIVERY, LOADING, UNLOADING, TRASH REMOVAL AND MAINTENANCE PURSUANT TO THE TERMS AND PROVISIONS OF THAT CERTAIN DECLARATION OF RECIPROCAL EASEMENTS, BY MURDOCK-WB ASSOCIATES, A CALIFORNIA GENERAL PARTNERSHIP, DATED JULY 18, 1985 AND RECORDED ON OCTOBER 9, 1985 AS INSTRUMENT NO. 85-1183374, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, AS GRANTED IN THAT CERTAIN DEED RECORDED ON NOVEMBER 8, 1985 AS INSTRUMENT NO. 85-1325654, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

PARCEL 7:

NON-EXCLUSIVE EASEMENTS FOR THE INSTALLATION, OPERATION, FLOW AND PASSAGE, USE, MAINTENANCE, REPAIR, RELOCATION AND REMOVAL OF SEWERS (INCLUDING UNDERGROUND STORM SEWERS), WATER AND GAS MAINS, ELECTRICAL POWER LINES, TELEPHONE LINES AND OTHER UTILITY LINES, ALL OF SUCH SEWERS, MAINS, AND LINES TO BE UNDERGROUND, AS GRANTED BY THAT CERTAIN RECIPROCAL EASEMENT AGREEMENT, DATED AUGUST 19, 1980, A MEMORANDUM OF WHICH WAS FILED ON OCTOBER 21, 1985 AS INSTRUMENT NO. 85-1236594, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, EXECUTED BY FIRST INTERSTATE BANK OF CALIFORNIA (FORMERLY UNITED CALIFORNIA BANK), PATRICIA WHITNEY, JACK D. BARNARD AND CHARLES M. BARNARD, AS CO-TRUSTEES UTA AUSTIN M. BARNARD, DECEASED (HEREIN "CO-TRUSTEES"), AND FIRST INTERSTATE BANK OF CALIFORNIA AND AUSTIN WHITNEY, AS CO-EXECUTORS OF THE ESTATE OF MARY E. BARNARD, DECEASED (HEREIN "CO-EXECUTORS") AND MURDOCK-WB ASSOCIATES, A CALIFORNIA GENERAL PARTNERSHIP, AS AMENDED BY AMENDMENT NO. 1, DATED OCTOBER 1, 1985, ALONG WITH CERTAIN EASEMENTS FOR INGRESS, EGRESS, PASSAGE AND PARKING OF VEHICLES, PASSAGE AND ACCOMMODATION OF PEDESTRIANS AND THE DOING OF SUCH OTHER THINGS AS ARE THEREIN AUTHORIZED OR REQUIRED, WITH RIGHT TO GRANT SAME TO "PERMITTEES", OVER PORTIONS OF SAID LAND AS THEREIN DESCRIBED, UPON THE TERMS, COVENANTS AND CONDITIONS AS THEREIN PROVIDED. SAID RECIPROCAL EASEMENT AGREEMENT ALSO PROVIDES FOR NON-EXCLUSIVE EASEMENTS FOR THE DEVELOPMENT AND CONSTRUCTION OF THE BUILDINGS, IMPROVEMENTS AND "COMMON AREA" LOCATED OR TO BE LOCATED ON SAID LAND PURSUANT TO THE UNRECORDED LEASE INSURED HEREIN AND FOR THE RECONSTRUCTION, ERECTION, REMOVAL AND MAINTENANCE OF SAID BUILDINGS, IMPROVEMENTS AND "COMMON AREA".

**Assessor's Parcel Number:** 4264-026-055

Exhibit C-3

OHS West:260803299.9
6826-75

B6B (Official Form 6B) (12/07)

In re  **Mission Real Associates, LLC**                                    Case No.  **2:10-bk-22370-BR**
_____,
                          Debtor

# SCHEDULE B - PERSONAL PROPERTY

Except as directed below, list all personal property of the debtor of whatever kind. If the debtor has no property in one or more of the categories, place an "x" in the appropriate position in the column labeled "None." If additional space is needed in any category, attach a separate sheet properly identified with the case name, case number, and the number of the category. If the debtor is married, state whether husband, wife, both, or the marital community own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor is an individual or a joint petition is filed, state the amount of any exemptions claimed only in Schedule C - Property Claimed as Exempt.

**Do not list interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.**

If the property is being held for the debtor by someone else, state that person's name and address under "Description and Location of Property."
If the property is being held for a minor child, simply state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m).

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 1.  Cash on hand | X | | | |
| 2.  Checking, savings or other financial accounts, certificates of deposit, or shares in banks, savings and loan, thrift, building and loan, and homestead associations, or credit unions, brokerage houses, or cooperatives. | | **Pacific Western Bank Acct. 005-003261 $142.85 (Maram Holdings, LLC, Wilshire Bundy Plaza Operating Acct.)**  **Acct.005-006627 (Wilshire Bundy Plaza) and/or 005-005841 (Wilshire Bundy Ground Lease) $41,567.53 (Debtor's interest Accts controlled by Pentaco Management, Inc.)** | - | 41,710.38 |
| 3.  Security deposits with public utilities, telephone companies, landlords, and others. | | **Security Deposit-Department of Water & Power** | - | 9,944.79 |
| | | **Security Deposit-Escrow** | - | 1,270,228.46 |
| | | **Security Deposit** | - | 458.38 |
| 4.  Household goods and furnishings, including audio, video, and computer equipment. | X | | | |
| 5.  Books, pictures and other art objects, antiques, stamp, coin, record, tape, compact disc, and other collections or collectibles. | X | | | |
| 6.  Wearing apparel. | X | | | |
| 7.  Furs and jewelry. | X | | | |
| 8.  Firearms and sports, photographic, and other hobby equipment. | X | | | |
| 9.  Interests in insurance policies. Name insurance company of each policy and itemize surrender or refund value of each. | X | | | |

|  | Sub-Total >  (Total of this page) | 1,322,342.01 |
|---|---|---|

__2__  continuation sheets attached to the Schedule of Personal Property

Software Copyright (c) 1996-2010 - Best Case Solutions - Evanston, IL - www.bestcase.com                    Best Case Bankruptcy

B6B (Official Form 6B) (12/07) - Cont.

In re    **Mission Real Associates, LLC**                                    Case No.   **2:10-bk-22370-BR**
                                      Debtor

# SCHEDULE B - PERSONAL PROPERTY
(Continuation Sheet)

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 10. Annuities. Itemize and name each issuer. | X | | | |
| 11. Interests in an education IRA as defined in 26 U.S.C. § 530(b)(1) or under a qualified State tuition plan as defined in 26 U.S.C. § 529(b)(1). Give particulars. (File separately the record(s) of any such interest(s). 11 U.S.C. § 521(c).) | X | | | |
| 12. Interests in IRA, ERISA, Keogh, or other pension or profit sharing plans. Give particulars. | X | | | |
| 13. Stock and interests in incorporated and unincorporated businesses. Itemize. | X | | | |
| 14. Interests in partnerships or joint ventures. Itemize. | X | | | |
| 15. Government and corporate bonds and other negotiable and nonnegotiable instruments. | X | | | |
| 16. Accounts receivable. | | Namco Capital Group-$1,032,284.38<br>Elyazadeh-$35,000.00<br>Roxy 15, LLC-$488,341.53<br>Trifish-$52,341.00 | - | 1,607,966.91 |
| 17. Alimony, maintenance, support, and property settlements to which the debtor is or may be entitled. Give particulars. | X | | | |
| 18. Other liquidated debts owed to debtor including tax refunds. Give particulars. | X | | | |
| 19. Equitable or future interests, life estates, and rights or powers exercisable for the benefit of the debtor other than those listed in Schedule A - Real Property. | X | | | |
| 20. Contingent and noncontingent interests in estate of a decedent, death benefit plan, life insurance policy, or trust. | X | | | |

Sub-Total >       1,607,966.91
(Total of this page)

Sheet  1  of  2   continuation sheets attached
to the Schedule of Personal Property

Software Copyright (c) 1996-2010 - Best Case Solutions - Evanston, IL - www.bestcase.com                                    Best Case Bankruptcy

B6B (Official Form 6B) (12/07) - Cont.

In re  **Mission Real Associates, LLC**                                      Case No. **2:10-bk-22370-BR**
                                        Debtor

## SCHEDULE B - PERSONAL PROPERTY
(Continuation Sheet)

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 21. Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims. Give estimated value of each. | X | | | |
| 22. Patents, copyrights, and other intellectual property. Give particulars. | X | | | |
| 23. Licenses, franchises, and other general intangibles. Give particulars. | X | | | |
| 24. Customer lists or other compilations containing personally identifiable information (as defined in 11 U.S.C. § 101(41A)) provided to the debtor by individuals in connection with obtaining a product or service from the debtor primarily for personal, family, or household purposes. | X | | | |
| 25. Automobiles, trucks, trailers, and other vehicles and accessories. | X | | | |
| 26. Boats, motors, and accessories. | X | | | |
| 27. Aircraft and accessories. | X | | | |
| 28. Office equipment, furnishings, and supplies. | | **Furniture & Fixtures** | - | 54,676.72 |
| 29. Machinery, fixtures, equipment, and supplies used in business. | X | | | |
| 30. Inventory. | X | | | |
| 31. Animals. | X | | | |
| 32. Crops - growing or harvested. Give particulars. | X | | | |
| 33. Farming equipment and implements. | X | | | |
| 34. Farm supplies, chemicals, and feed. | X | | | |
| 35. Other personal property of any kind not already listed. Itemize. | X | | | |

|  | Sub-Total > | 54,676.72 |
|---|---|---|
|  | (Total of this page) | |
|  | Total > | 2,984,985.64 |

Sheet __2__ of __2__ continuation sheets attached
to the Schedule of Personal Property

(Report also on Summary of Schedules)

B6D (Official Form 6D) (12/07)

In re    **Mission Real Associates, LLC**                                          Case No.   **2:10-bk-22370-BR**
                                    Debtor

# SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number of all entities holding claims secured by property of the debtor as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. List creditors holding all types of secured interests such as judgment liens, garnishments, statutory liens, mortgages, deeds of trust, and other security interests.

List creditors in alphabetical order to the extent practicable. If a minor child is a creditor, the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m). If all secured creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor" ,include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H", "W", "J", or "C" in the column labeled "Husband, Wife, Joint, or Community".

If the claim is contingent, place an "X" in the column labeled "Contingent". If the claim is unliquidated, place an "X" in the column labeled "Unliquidated". If the claim is disputed, place an "X" in the column labeled "Disputed". (You may need to place an "X" in more than one of these three columns.)

Total the columns labeled "Amount of Claim Without Deducting Value of Collateral" and "Unsecured Portion, if Any" in the boxes labeled "Total(s)" on the last sheet of the completed schedule. Report the total from the column labeled "Amount of Claim" also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report the total from the column labeled "Unsecured Portion" on the Statistical Summary of Certain Liabilities and Related Data.

☐    Check this box if debtor has no creditors holding secured claims to report on this Schedule D.

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | Husband, Wife, Joint, or Community | | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|---|
| | | H | W J C | | | | | | |
| Account No. | | | | 11/12/08 | | | | | |
| Hersel Babajoni PO BOX 491335 Los Angeles, CA 90049 | | - | | UCC Financing Statement 08717182841 12121 Wilshire Blvd. LA, CA 90025 | X | X | X | | |
| | | | | Value $                0.00 | | | | Unknown | Unknown |
| Account No. | | | | Notice purpose re JP Morgan Chase Commercial Claim | | | | | |
| JP Morgan Chase Commercial c/o H. Mark Mersel, Esq. Bryan Cave, LLP 3161 Michelson Drive, Ste 1500 Irvine, CA 92612 | | - | | | | | | | |
| | | | | Value $                0.00 | | | | 0.00 | 0.00 |
| Account No. | | | | 2/21/07 | | | | | |
| JP Morgan Chase Commercial Mortgage Securities Corp. c/o Capmark Financial/CMBS 116 Welsh Road Horsham, PA 19044 | | - | | Commercial land & Ground Lease Property located @ 12121 Wilshire Blvd. Los Angeles, CA 90025 Notice Purpose | X | X | X | | |
| | | | | Value $         99,500,000.00 | | | | 0.00 | 0.00 |
| Account No. | | | | 3/30/06 | | | | | |
| JP Morgan Chase Commercial Mortgage Securities Commercial Mortgage Pass Through PO BOX 100116 Pasadena, CA 91189-0116 | X | - | | Commercial Bldg 12121 Wilshire Blvd. Los Angeles, CA 90025 | X | X | X | | |
| | | | | Value $         99,500,000.00 | | | | 57,062,597.00 | 0.00 |

|  | | |
|---|---|---|
| **0**    continuation sheets attached | Subtotal (Total of this page) | 57,062,597.00 | 0.00 |
| | Total (Report on Summary of Schedules) | 57,062,597.00 | 0.00 |

Software Copyright (c) 1996-2010 - Best Case Solutions - Evanston, IL - www.bestcase.com                    Best Case Bankruptcy

B6E (Official Form 6E) (12/07)

In re    **Mission Real Associates, LLC**
_____,    Case No.    **2:10-bk-22370-BR**
                                    Debtor

# SCHEDULE E - CREDITORS HOLDING UNSECURED PRIORITY CLAIMS

A complete list of claims entitled to priority, listed separately by type of priority, is to be set forth on the sheets provided. Only holders of unsecured claims entitled to priority should be listed in this schedule. In the boxes provided on the attached sheets, state the name, mailing address, including zip code, and last four digits of the account number, if any, of all entities holding priority claims against the debtor or the property of the debtor, as of the date of the filing of the petition. Use a separate continuation sheet for each type of priority and label each with the type of priority.

The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. If a minor child is a creditor, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m).

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor," include the entity on the appropriate schedule of creditors, and complete Schedule H-Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the claim is contingent, place an "X" in the column labeled "Contingent." If the claim is unliquidated, place an "X" in the column labeled "Unliquidated." If the claim is disputed, place an "X" in the column labeled "Disputed." (You may need to place an "X" in more than one of these three columns.)

Report the total of claims listed on each sheet in the box labeled "Subtotals" on each sheet. Report the total of all claims listed on this Schedule E in the box labeled "Total" on the last sheet of the completed schedule. Report this total also on the Summary of Schedules.

Report the total of amounts entitled to priority listed on each sheet in the box labeled "Subtotals" on each sheet. Report the total of all amounts entitled to priority listed on this Schedule E in the box labeled "Totals" on the last sheet of the completed schedule. Individual debtors with primarily consumer debts report this total also on the Statistical Summary of Certain Liabilities and Related Data.

Report the total of amounts not entitled to priority listed on each sheet in the box labeled "Subtotals" on each sheet. Report the total of all amounts not entitled to priority listed on this Schedule E in the box labeled "Totals" on the last sheet of the completed schedule. Individual debtors with primarily consumer debts report this total also on the Statistical Summary of Certain Liabilities and Related Data.

■ Check this box if debtor has no creditors holding unsecured priority claims to report on this Schedule E.

**TYPES OF PRIORITY CLAIMS** (Check the appropriate box(es) below if claims in that category are listed on the attached sheets)

☐ **Domestic support obligations**

Claims for domestic support that are owed to or recoverable by a spouse, former spouse, or child of the debtor, or the parent, legal guardian, or responsible relative of such a child, or a governmental unit to whom such a domestic support claim has been assigned to the extent provided in 11 U.S.C. § 507(a)(1).

☐ **Extensions of credit in an involuntary case**

Claims arising in the ordinary course of the debtor's business or financial affairs after the commencement of the case but before the earlier of the appointment of a trustee or the order for relief. 11 U.S.C. § 507(a)(3).

☐ **Wages, salaries, and commissions**

Wages, salaries, and commissions, including vacation, severance, and sick leave pay owing to employees and commissions owing to qualifying independent sales representatives up to $10,950* per person earned within 180 days immediately preceding the filing of the original petition, or the cessation of business, whichever occurred first, to the extent provided in 11 U.S.C. § 507(a)(4).

☐ **Contributions to employee benefit plans**

Money owed to employee benefit plans for services rendered within 180 days immediately preceding the filing of the original petition, or the cessation of business, whichever occurred first, to the extent provided in 11 U.S.C. § 507(a)(5).

☐ **Certain farmers and fishermen**

Claims of certain farmers and fishermen, up to $5,400* per farmer or fisherman, against the debtor, as provided in 11 U.S.C. § 507(a)(6).

☐ **Deposits by individuals**

Claims of individuals up to $2,425* for deposits for the purchase, lease, or rental of property or services for personal, family, or household use, that were not delivered or provided. 11 U.S.C. § 507(a)(7).

☐ **Taxes and certain other debts owed to governmental units**

Taxes, customs duties, and penalties owing to federal, state, and local governmental units as set forth in 11 U.S.C. § 507(a)(8).

☐ **Commitments to maintain the capital of an insured depository institution**

Claims based on commitments to the FDIC, RTC, Director of the Office of Thrift Supervision, Comptroller of the Currency, or Board of Governors of the Federal Reserve System, or their predecessors or successors, to maintain the capital of an insured depository institution. 11 U.S.C. § 507 (a)(9).

☐ **Claims for death or personal injury while debtor was intoxicated**

Claims for death or personal injury resulting from the operation of a motor vehicle or vessel while the debtor was intoxicated from using alcohol, a drug, or another substance. 11 U.S.C. § 507(a)(10).

* Amounts are subject to adjustment on April 1, 2010, and every three years thereafter with respect to cases commenced on or after the date of adjustment.

_____0_____ continuation sheets attached

16

B6F (Official Form 6F) (12/07)

In re    **Mission Real Associates, LLC**                                              Case No.   **2:10-bk-22370-BR**
                                                          ─────────────────
                                                          Debtor

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number, of all entities holding unsecured claims without priority against the debtor or the property of the debtor, as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. If a minor child is a creditor, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m). Do not include claims listed in Schedules D and E. If all creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor," include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community."

If the claim is contingent, place an "X" in the column labeled "Contingent." If the claim is unliquidated, place an "X" in the column labeled "Unliquidated." If the claim is disputed, place an "X" in the column labeled "Disputed." (You may need to place an "X" in more than one of these three columns.)

Report the total of all claims listed on this schedule in the box labeled "Total" on the last sheet of the completed schedule. Report this total also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report this total also on the Statistical Summary of Certain Liabilities and Related Data.

☐   Check this box if debtor has no creditors holding unsecured claims to report on this Schedule F.

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | Husband, Wife, Joint, or Community | | | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|---|---|
| | | H | W J | C | | | | | |
| Account No. | | | | | Security Deposit | | | | |
| Accelerize New Media, Inc. 12121 Wilshire Blvd. Los Angeles, CA 90025 | - | | | | | X | X | X | 6,463.31 |
| Account No. | | | | | Security Deposit | | | | |
| Advance Skin & Hair 12121 Wilshire Blvd. Los Angeles, CA 90025 | - | | | | | X | X | X | 4,652.64 |
| Account No. | | | | | Security Deposit | | | | |
| Amherst Real Estate Capital 12121 Wilshire Blvd. Los Angeles, CA 90025 | - | | | | | X | X | X | 2,467.50 |
| Account No. | | | | | Security Deposit | | | | |
| Bensym, Inc. 12121 Wilshire Blvd. Los Angeles, CA 90025 | - | | | | | X | X | X | 6,165.92 |
| __11__ continuation sheets attached | | | | | Subtotal (Total of this page) | | | | 19,749.37 |

B6F (Official Form 6F) (12/07) - Cont.

In re   **Mission Real Associates, LLC**                                    Case No.   **2:10-bk-22370-BR**
_____,
                              Debtor

## SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
(Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | H W J C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| Account No.<br><br>**Boyle Avenue, LLC**<br>**K. Jospeh Shabani, Esq.**<br>**c/o Shabani & Shabani LLP**<br>**Los Angeles, CA 90067** | - | | **6/18/09**<br>**State Court Action-Superior Court of CA Cross**<br>**Complaint**<br>**BC 410017** | X | X | X | 5,000,000.00 |
| Account No.<br><br>**Brickwalk, LLC**<br>**K. Joseph Shabani, Esq.**<br>**c/o Shabani & Shabani LLP**<br>**Los Angeles, CA 90067** | - | | **6/18/09**<br>**State Court Action-Superior Court of CA Cross**<br>**Complaint**<br>**BC 410017** | X | X | X | 5,000,000.00 |
| Account No.<br><br>**Brown & Weston, Inc.**<br>**12121 Wilshire Blvd.**<br>**Los Angeles, CA 90025** | - | | **Security Deposit** | X | X | X | 19,984.35 |
| Account No.<br><br>**Buckingham Heights Lease LLC**<br>**Namco Capital Group, Inc.**<br>**c/o Bradley D. Sharp, Trustee**<br>**12121 Wilshire Blvd, Ste 200**<br>**Los Angeles, CA 90025** | - | | **Loan for Wilshire Bundy Plaza** | | | | 600,000.00 |
| Account No.<br><br>**Burris & Shoenberg, LLP**<br>**12121 Wilshire Blvd.**<br>**Los Angeles, CA 90025** | - | | **Security Deposit** | X | X | X | 8,333.15 |

Sheet no. __1__ of __11__ sheets attached to Schedule of
Creditors Holding Unsecured Nonpriority Claims

Subtotal
(Total of this page)          | 10,628,317.50 |

B6F (Official Form 6F) (12/07) - Cont.

In re   **Mission Real Associates, LLC**                              Case No.   **2:10-bk-22370-BR**
                                        Debtor

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
(Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | Husband, Wife, Joint, or Community | | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|---|
| | | H W | J C | | | | | |
| Account No. | | | | Security Deposit | | | | |
| Business Wire, Inc. 12121 Wilshire Blvd. Los Angeles, CA 90025 | | - | | | X | X | X | 29,531.28 |
| Account No. | | | | 3/19/2010 Escrow Disbursement Agreement | | | | |
| Cap 16 Delaware Spe LLC c/o Pentaco Management Inc. 12121 Wilshire Blvd., Ste 601 Los Angeles, CA 90025 | | - | | | X | X | | 130,805.76 |
| Account No. | | | | Security Deposit | | | | |
| CEL & Associates, Inc. 12121 Wilshire Blvd. Los Angeles, CA 90025 | | - | | | X | X | X | 8,599.70 |
| Account No. | | | | Security Deposit | | | | |
| Constituents Direct, Inc. 12121 Wilshire Blvd. Los Angeles, CA 90025 | | - | | | X | X | X | 31,699.62 |
| Account No. | | | | Loan for Wilshire Bundy Plaza | | | | |
| Culver Marina Lease, LLC Namco Capital Group, Inc. c/o Bradley D. Sharp, Trustee 12121 Wilshireb Blvvd., Ste 200 Los Angele, CA 90025 | | - | | | | | | 35,000.00 |

Sheet no. __2__ of __11__ sheets attached to Schedule of
Creditors Holding Unsecured Nonpriority Claims

Subtotal
(Total of this page)                    235,636.36

Software Copyright (c) 1996-2010 - Best Case Solutions - Evanston, IL - www.bestcase.com                    Best Case Bankruptcy

B6F (Official Form 6F) (12/07) - Cont.

In re   **Mission Real Associates, LLC**                                      Case No.   **2:10-bk-22370-BR**
                                                    Debtor

## SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
(Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | Husband, Wife, Joint, or Community | | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|---|
| | | H W | J C | | | | | |
| Account No. | | | | Security Deposit | | | | |
| David Tabibian 12121 Wilshire Blvd. Los Angeles, CA 90025 | - | | | | X | X | X | 3,748.50 |
| Account No. | | | | Security Deposit | | | | |
| DL Ryan Companies, Ltd. 12121 Wilshire Blvd. Los Angeles, CA 90025 | - | | | | X | X | X | 163,602.57 |
| Account No. | | | | Security Deposit | | | | |
| Eric R. Steinwald Accountancy 12121 Wilshire Blvd. Los Angeles, CA 90025 | - | | | | X | X | X | 5,105.80 |
| Account No. | | | | 3/19/2010 Escrow Disbursement Agreement | | | | |
| Expo Delaware Spe LLC c/o Pentaco Management, Inc. 12121 Wilshire Blvd., Ste 601 Los Angeles, CA 90025 | - | | | | X | X | | 130,805.76 |
| Account No. | | | | Security Deposit | | | | |
| Fossil Partners, LP 12121 Wilshire Blvd. Los Angeles, CA 90025 | - | | | | X | X | X | 6,556.26 |

Sheet no. __3__ of __11__ sheets attached to Schedule of Creditors Holding Unsecured Nonpriority Claims

Subtotal
(Total of this page)   **309,818.89**

Software Copyright (c) 1996-2010 - Best Case Solutions - Evanston, IL - www.bestcase.com                Best Case Bankruptcy

B6F (Official Form 6F) (12/07) - Cont.

In re   **Mission Real Associates, LLC**                                    Case No.  **2:10-bk-22370-BR**
                                                 Debtor

## SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
### (Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | Husband, Wife, Joint, or Community | | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|---|
| | | H W | J C | | | | | |
| Account No. | | | | Security Deposit | | | | |
| Frank Foroutan Insurance 12121 Wilshire Blvd. Los Angeles, CA 90025 | | - | | | X | X | X | |
| | | | | | | | | 3,269.10 |
| Account No. | | | | Security Deposit | | | | |
| Frontier Dental Management 12121 Wilshire Blvd. Los Angeles, CA 90025 | | - | | | X | X | X | |
| | | | | | | | | 18,400.38 |
| Account No. | | | | Security Deposit | | | | |
| Fusion Public Relations 12121 Wilshire Blvd. Los Angeles, CA 90025 | | - | | | X | X | X | |
| | | | | | | | | 4,655.25 |
| Account No. | | | | Security Deposit | | | | |
| Graves Law Office, PC 12121 Wilshire Blvd. Los Angeles, CA 90025 | | - | | | X | X | X | |
| | | | | | | | | 32,733.81 |
| Account No. | | | | 1/12/04 UCC Lien | | | | |
| HSBC Realty Credit Corporation USA c/o Paul Hastings Janosky & Walker 24th Floor 55 Second Street San Francisco, CA 94105-3441 | | - | | | X | X | X | |
| | | | | | | | | Unknown |

Sheet no.  **4**   of  **11**   sheets attached to Schedule of
Creditors Holding Unsecured Nonpriority Claims

Subtotal
(Total of this page)                           59,058.54

B6F (Official Form 6F) (12/07) - Cont.

In re   **Mission Real Associates, LLC**                                          Case No.   **2:10-bk-22370-BR**
                                                    Debtor

## SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
(Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | H W J C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| Account No. | | | Security Deposit | | | | |
| **Institute of Contemporary Psychoanalysis** 12121 Wilshire Blvd. Los Angeles, CA 90025 | - | | | X | X | X | 8,169.60 |
| Account No. | | | Security Deposit | | | | |
| **Integrated Corporation** 12121 Wilshire Blvd. Los Angeles, CA 90025 | - | | | X | X | X | 12,132.90 |
| Account No. | | | Security Deposit | | | | |
| **Jalmar Properties, Inc.** 12121 Wilshire Blvd. Los Angeles, CA 90025 | - | | | X | X | X | 14,238.15 |
| Account No. | | | 5/27/09 State Court Action-Superior Court of CA Khalil Varastephour v. Civic Palm, LLC et al., BC 410781 | | | | |
| **Khalil Varastephour** c/o Marc E. Rohatiner, Esq. Wolf Rifkin Shapiro Schulman et al. 11400 West Olympic Blvd., 9th Fl Los Angeles, CA 90064 | - | | | X | | X | 350,000.00 |
| Account No. | | | Security Deposit | | | | |
| **Lewis Thomashow** 12121 Wilshire Blvd. Los Angeles, CA 90025 | - | | | X | X | X | 12,909.58 |

Sheet no. **5** of **11** sheets attached to Schedule of                     Subtotal
Creditors Holding Unsecured Nonpriority Claims                        (Total of this page)          397,450.23

B6F (Official Form 6F) (12/07) - Cont.

In re    **Mission Real Associates, LLC**                                    Case No.   **2:10-bk-22370-BR**
                                                Debtor

## SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
(Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | H W J C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| Account No. | | | Security Deposit | | | | |
| **MacDonald Living Trust** **12121 Wilshire Blvd.** **Los Angeles, CA 90025** | - | | | X | X | X | |
| | | | | | | | 3,422.20 |
| Account No. | | | Security Deposit | | | | |
| **Madison Marquette Retail** **12121 Wilshire Blvd.** **Los Angeles, CA 90025** | - | | | X | X | X | |
| | | | | | | | 9,677.10 |
| Account No. | | | Loan for Wilshire Bundy Plaza | | | | |
| **McConnell Marina Lease, LLC** **Namco Capital Group, Inc.** **c/o Bradley D. Sharp, Trustee** **12121 Wilshire Blvd., Ste 200** **Los Angeles, CA 90025** | - | | | | | | |
| | | | | | | | 50,000.00 |
| Account No. | | | 1/9/09 State Court Action-Superior Court of CA Moiz Ashourpour and Saraly Anavim v. Ezri Namvar et al., SC101281 | | | | |
| **Moiz Ashourpour** **c/o Saul Reiss, Esq.** **Law Offices of Saul Reiss, P.C.** **2800 28th Street** **Los Angeles, CA 90405** | - | | | X | X | X | |
| | | | | | | | 1,922,663.55 |
| Account No. | | | Adjustments | | | | |
| **Namco Capital Group** **c/o Bradley D. Sharp, Trustee** **12121 Wilshire Blvd., Ste 200** **Los Angeles, CA 90025** | - | | | | | | |
| | | | | | | | 28,858.33 |

Sheet no.  **6**   of  **11**   sheets attached to Schedule of
Creditors Holding Unsecured Nonpriority Claims

Subtotal
(Total of this page)                                    2,014,621.18

B6F (Official Form 6F) (12/07) - Cont.

In re   **Mission Real Associates, LLC**                                    Case No.  **2:10-bk-22370-BR**
_____
                              Debtor

## SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
(Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | H W J C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| Account No. | | | Security Deposit | | | | |
| Namco Insurance Service 12121 Wilshire Blvd. Los Angeles, CA 90025 | - | | | X | X | X | 5,505.99 |
| Account No. | | | 6/18/09 State Court Action-Superior Court of CA Cross Complaint BC 410017 | | | | |
| Robert Hanasab Anthony J. Oliva, Esq. c/o Allen Matkins Leck Gamble et al 515 S. Figueroa Street, 9th Fl Los Angeles, CA 90071 | - | | | X | X | X | 5,000,000.00 |
| Account No. | | | 6/18/09 State Court Action-Superior Court of CA Cross Complaint BC 410017 | | | | |
| Rolling Capital Hills, LLC K. Joseph Shabani, Esq. c/o Shabani & Shabani LLP Los Angeles, CA 90067 | - | | | X | X | X | 5,000,000.00 |
| Account No. | | | Security Deposit | | | | |
| RoundTrip LLC 12121 Wilshire Blvd. Los Angeles, CA 90025 | - | | | X | X | X | 21,461.60 |
| Account No. | | | 6/18/09 State Court Action-Superior Court of CA Cross Complaint BC 410017 | | | | |
| Safeco Holding Corp Anthony J. Oliva, Esq. c/o Allen Matkins Leck Gamble et al 515 S. Figueroa Street, 9th Fl Los Angeles, CA 90071 | - | | | X | X | X | 5,000,000.00 |

Sheet no.  **7**    of  **11**   sheets attached to Schedule of
Creditors Holding Unsecured Nonpriority Claims

Subtotal
(Total of this page)      **15,026,967.59**

B6F (Official Form 6F) (12/07) - Cont.

In re  **Mission Real Associates, LLC**                                      Case No.   **2:10-bk-22370-BR**
                                                    Debtor

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
### (Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | H W J C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| Account No.                                          | | | Security Deposit | | | | |
| Saltzburg Ray & Bergman LLP<br>12121 Wilshire Blvd.<br>Los Angeles, CA 90025 | | - | | X | X | X | 34,700.22 |
| Account No.                                          | | | 1/9/09<br>State Court Action-Superior Court of CA<br>Moiz Ashourpour and Saraly Anavim v. Ezri<br>Namvar et al., SC101281 | | | | |
| Saraly Anavim<br>c/o Saul Reiss, Esq.<br>Law Offices of Saul Reiss, P.C.<br>2800 28th Street<br>Los Angeles, CA 90405 | | - | | X | X | X | 1,922,663.55 |
| Account No.                                          | | | Security Deposit | | | | |
| Sasan Kohan<br>12121 Wilshire Blvd.<br>Los Angeles, CA 90025 | | - | | X | X | X | 1,524.50 |
| Account No.                                          | | | 3/19/2010<br>Escrow Disbursement Agreement | | | | |
| Seven Mills Delaware Spe LLC<br>c/o Pentaco Management Inc.<br>12121 Wilshire Blvd., Ste 601<br>Los Angeles, CA 90025 | | - | | X | X | | 130,805.76 |
| Account No.                                          | | | Security Deposit | | | | |
| Shaub & Williams<br>12121 Wilshire Blvd.<br>Los Angeles, CA 90025 | | - | | X | X | X | 20,927.60 |

Sheet no.  **8**    of  **11**   sheets attached to Schedule of
Creditors Holding Unsecured Nonpriority Claims

Subtotal
(Total of this page)            **2,110,621.63**

B6F (Official Form 6F) (12/07) - Cont.

In re   **Mission Real Associates, LLC**                                    Case No.   **2:10-bk-22370-BR**
_____
                            Debtor

## SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
### (Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | Husband, Wife, Joint, or Community | | | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|---|---|
| | | H | W | J C | | | | | |
| **Account No.** | | | | | Security Deposit | | | | |
| **Southland Realty Advisors** 12121 Wilshire Blvd. Los Angeles, CA 90025 | - | | | | | X | X | X | |
| | | | | | | | | | 1,992.79 |
| **Account No.** | | | | | Security Deposit | | | | |
| **Space Computer Corporation** 12121 Wilshire Blvd. Los Angeles, CA 90025 | - | | | | | X | X | X | |
| | | | | | | | | | 35,492.70 |
| **Account No.** | | | | | 6/18/09 State Court Action-Superior Court of CA Cross Complaint BC 410017 | | | | |
| **Starpoint Properties LLC** Anthony J. Oliva, Esq. c/o Allen Matkins Leck Gamble et al 515 S. Figueroa Street, 9th Fl Los Angeles, CA 90071 | - | | | | | X | X | X | |
| | | | | | | | | | 5,000,000.00 |
| **Account No.** | | | | | 3/19/201 Escrow Disbursement Agreement | | | | |
| **Sunset-8 Delaware Spe LLC** c/o Pentaco Management Inc. 12121 Wilshire Blvd., Ste 601 Los Angeles, CA 90025 | - | | | | | X | X | | |
| | | | | | | | | | 130,805.76 |
| **Account No.** | | | | | Security Deposit | | | | |
| **Sy Lipman** 12121 Wilshire Blvd. Los Angeles, CA 90025 | - | | | | | X | X | X | |
| | | | | | | | | | 9,554.39 |

Sheet no. **9** of **11** sheets attached to Schedule of
Creditors Holding Unsecured Nonpriority Claims

Subtotal
(Total of this page)

5,177,845.64

B6F (Official Form 6F) (12/07) - Cont.

In re    **Mission Real Associates, LLC**                                    Case No.   **2:10-bk-22370-BR**
                                    Debtor

## SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
(Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | Husband, Wife, Joint, or Community | | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|---|
| | | H W | J C | | | | | |
| Account No. | | | | Security Deposit | | | | |
| The Doctor's Company 12121 Wilshire Blvd. Los Angeles, CA 90025 | - | | | | X | X | X | 15,440.91 |
| Account No. | | | | Security Deposit | | | | |
| Trope & Trope 12121 Wilshire Blvd. Los Angeles, CA 90025 | - | | | | X | X | X | 22,763.75 |
| Account No. | | | | Security Deposit | | | | |
| Vastano & Angarella 12121 Wilshire Blvd. Los Angeles, CA 90025 | - | | | | X | X | X | 11,028.16 |
| Account No. | | | | Loan for Wilshire Bundy Plaza | | | | |
| Watt Leed Lease, LLC Namco Capital Group, Inc. c/o Bradley D. Sharp, Trustee 12121 Wilshire Blvd., Ste 200 Los Angeles, CA 90025 | - | | | | | | | 50,000.00 |
| Account No. | | | | Security Deposit | | | | |
| Werner Publishing Corporation 12121 Wilshire Blvd. Los Angeles, CA 90025 | - | | | | X | X | X | 58,817.15 |

Sheet no.  **10**  of  **11**  sheets attached to Schedule of                    Subtotal                158,049.97
Creditors Holding Unsecured Nonpriority Claims                    (Total of this page)

B6F (Official Form 6F) (12/07) - Cont.

In re   **Mission Real Associates, LLC**                                      Case No.   **2:10-bk-22370-BR**
                                                                    Debtor

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
(Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | Husband, Wife, Joint, or Community | | | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|---|---|
| | | H | W J | C | | | | | |
| Account No. | | | | | Security Deposit | | | | |
| Westcoast Collection, Inc. 12121 Wilshire Blvd. Los Angeles, CA 90025 | - | | | | | X | X | X | 2,071.78 |
| Account No. | | | | | | | | | |
| | | | | | | | | | |
| Account No. | | | | | | | | | |
| | | | | | | | | | |
| Account No. | | | | | | | | | |
| | | | | | | | | | |
| Account No. | | | | | | | | | |
| | | | | | | | | | |

| | | |
|---|---|---|
| Sheet no. __11__ of __11__ sheets attached to Schedule of Creditors Holding Unsecured Nonpriority Claims | Subtotal (Total of this page) | 2,071.78 |
| | Total (Report on Summary of Schedules) | 36,140,208.68 |

B6G (Official Form 6G) (12/07)

In re    **Mission Real Associates, LLC**                                          Case No.  **2:10-bk-22370-BR**
                                                                              _____
                                      Debtor

# SCHEDULE G - EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Describe all executory contracts of any nature and all unexpired leases of real or personal property. Include any timeshare interests. State nature of debtor's interest in contract, i.e., "Purchaser", "Agent", etc. State whether debtor is the lessor or lessee of a lease. Provide the names and complete mailing addresses of all other parties to each lease or contract described. If a minor child is a party to one of the leases or contracts, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m).

☐ Check this box if debtor has no executory contracts or unexpired leases.

| Name and Mailing Address, Including Zip Code, of Other Parties to Lease or Contract | Description of Contract or Lease and Nature of Debtor's Interest. State whether lease is for nonresidential real property. State contract number of any government contract. |
|---|---|
| **Lessors Under Ground Lease**<br>**12121 Wilshire Blvd., Ste 601**<br>**Los Angeles, CA 90025** | **See attached Ground Lease dated 8/19/80**<br>**assigned 8/15/03** |
| **R. Todd Neilson Chapter 11 Trustee**<br>**for Estate of Ezri Namvar**<br>**LECG, LLC**<br>**2049 Century Park East, Ste 2300**<br>**Los Angeles, CA 90067** | **Purchase Sale Agreement dated 3/16/10**<br>**(See Attached Copy of PSA)** |

**0**                                                                              **28**

# EXHIBIT A

## PURCHASE AND SALE AGREEMENT

### AMONG

R. Todd Neilson, Chapter 11 Trustee for Ezri Namvar (the "Trustee"), Debtor in Bankruptcy Case No. 2:08-bk-32349-BR (the "Namvar Case"), Mission Real Associates LLC, a California limited liability company (the " Fee and Leasehold Seller") and Bundy Dimes LLC, a Delaware limited liability company (the " Fee Seller"), and the Trustee, Fee and Leasehold Seller and Fee Seller are

### THE COLLECTIVE "SELLER",

and

Wilshire Bundy Investments, Inc., a Delaware corporation

### AS "BUYER"

## TABLE OF CONTENTS

Page

1.   PURCHASE AND SALE.................................................................................2

2.   PURCHASE PRICE; DEPOSIT; ESCROW................................................4

3.   BUYER'S ACKNOWLEDGMENT RE FULL INVESTIGATION ...............6

4.   AS-IS SALE; RELEASE AND INDEMNITY ...............................................7

    4.1   As-Is Sale.............................................................................................7

    4.2   Release and Indemnity........................................................................8

    4.3   Representations and Warranties of Seller.........................................9

    4.4   Seller's Knowledge ...........................................................................11

    4.5   Limitations on Seller's Representations and Warranties; No Survival ...............12

    4.6   Representations and Warranties of Buyer .......................................12

5.   INTERIM OPERATION OF THE PROPERTY .........................................13

    5.1   After Effective Date...........................................................................13

6.   CONDITIONS TO CLOSING ......................................................................15

    6.1   Conditions to Buyer's Obligations to Close.....................................15

    6.2   Conditions to Seller's Obligations to Close .....................................16

    6.3   Condition to Both Seller's and Buyer's Obligations........................17

7.   CLOSING AND TRANSFER OF TITLE ....................................................20

    7.1   Closing Date ......................................................................................20

    7.2   Seller's Deliveries.............................................................................21

    7.3   Buyer's Deliveries.............................................................................22

    7.4   Possession of the Property................................................................23

8.   PRORATIONS AND ADJUSTMENTS........................................................23

    8.1   General...............................................................................................23

    8.2   Post Closing Reconciliation ..............................................................25

    8.3   Survival..............................................................................................27

9.   RISK OF LOSS AND INSURANCE PROCEEDS.......................................27

    9.1   Minor Loss.........................................................................................27

# TABLE OF CONTENTS
(continued)

Page

| | | |
|---|---|---|
| | 9.2 | Major Loss ...................................................................27 |
| 10. | DEFAULT | ...................................................................28 |
| 11. | EXPENSES | ...................................................................29 |
| 12. | BROKERS | ...................................................................30 |
| 13. | NO ASSIGNMENT | ...................................................................30 |
| 14. | NOTICES | ...................................................................31 |
| 15. | MISCELLANEOUS | ...................................................................32 |
| | 15.1 | Attorneys' Fees; Exclusive Jurisdiction ...............32 |
| | 15.2 | Gender ...................................................................32 |
| | 15.3 | Captions ...................................................................32 |
| | 15.4 | Construction ...................................................................32 |
| | 15.5 | Business Days; Deadlines ...................................33 |
| | 15.6 | Entire Agreement ...................................................33 |
| | 15.7 | Recording ...................................................................33 |
| | 15.8 | No Continuance ...................................................33 |
| | 15.9 | Time of Essence ...................................................33 |
| | 15.10 | Original Document; Trustee Covenant ...............34 |
| | 15.11 | Governing Law ...................................................34 |
| | 15.12 | Confidentiality ...................................................34 |
| | 15.13 | Amendment ...................................................................34 |
| | 15.14 | Waiver ...................................................................34 |
| | 15.15 | Reasonable Access to Records and Certain Personnel ...34 |
| | 15.16 | Limited Recourse to Trustee ...............................35 |
| | 15.17 | Further Assurances ...............................................35 |

Case 2:08-bk-32349-BR    Doc 447-1    Filed 03/18/10    Entered 03/18/10 19:24:43    Desc
40
Ex A    Part 1    Page 5 of 33

## LIST OF SCHEDULES

| | |
|---|---|
| 1(a) | Description of the Land |
| 1(d) | Schedule of Personal Property |
| 1(e) | Schedule of Existing Leases |
| 1(f) | Schedule of Existing Miscellaneous Agreements |
| 1(j) | Schedule of Ground Lease and Assignments and Amendments |
| 2(d)-1 | Schedule of WFB Loan Documents |
| 2(d)-2 | Schedule of AGL Loan Documents |
| 3 | Schedule of Due Diligence Documents |
| 4.3(d) | Schedule of Tenant Defaults and Settlements |
| 4.3(h) | Schedule of Property Litigation |
| 4.3(k) | Schedule of Security Deposits, Letters of Credit and Reserves |
| 6.1 | Schedule of Outside Dates |
| 8.1(a)(ix) | Schedule of Unfunded Tenant Improvement Allowances and Unpaid Leasing Commissions |
| 11 | Survey |

## LIST OF EXHIBITS

| | |
|---|---|
| Exhibits A-1 and A-2 | Deeds |
| Exhibits B-1 and B-2 | Assignments of Ground Lease |
| Exhibit C | Bill of Sale |
| Exhibit D | Assignment and Assumption of Leases |
| Exhibit E | Intentionally Omitted |
| Exhibit F | Assignment and Assumption of Permits, Intangible Property and Warranties |
| Exhibit G | Assignment and Assumption of WFB Loan and Loan Documents and Lender's Consent |
| Exhibit H | Assignment and Assumption of AGL Loan and Loan Documents and Lender's Consent |
| Exhibits I-1 and I-2 | FIRPTA Affidavits |
| Exhibit J | Designation Agreement |
| Exhibit K | Letter to Tenants |
| Exhibit L | Pro Forma Title Policy |
| Exhibit M | Sales Procedure Order |

## PURCHASE AND SALE AGREEMENT

This Purchase and Sale Agreement (this "**Agreement**"), dated for reference purposes as of March 16, 2010, is made by and among **R. Todd Neilson, Chapter 11 Trustee (the "Trustee") for Ezri Namvar ("EN"), Debtor in Bankruptcy Case No. 2:08-bk-32349-BR (the "Namvar Case") in the Bankruptcy Court (as defined below), Mission Real Associates LLC, a California limited liability company ("MREA" and the " Fee and Leasehold Seller") and Bundy Dimes LLC, a Delaware limited liability company ("BD" and the " Fee Seller", and the Trustee, and upon execution by the Fee and Leasehold Seller and Fee Seller are, as applicable, collectively referred to as the "Seller"), on the one hand, and Wilshire Bundy Investments, Inc., a Delaware corporation (the "Buyer"),** on the other hand. This Agreement shall not be effective until executed by both Buyer and the Trustee, and the date on which this Agreement is executed by Buyer or the Trustee, whichever is later, as indicated on the signature page hereto, shall be referred to herein as the "**Effective Date.**"

## RECITALS

On or about December 22, 2008, certain creditors of Ezri Namvar ("**EN**") filed an involuntary petition under Chapter 11 of the Bankruptcy Code, captioned In Re Ezri Namvar in the United States Bankruptcy Court Central District of California, Los Angeles Division (the "**Bankruptcy Court**"), BK No. 2:08-bk-32349-BR.

On or about March 11, 2009, the Bankruptcy Court entered an order appointing R. Todd Neilson as the Trustee for the EN's estate.

On or about August 5, 2009, the Seller entered into an Exclusive Right Listing Agreement-Sale with Madison Partners(the "**Exclusive Listing Agreement**") to market and sell the Property (as defined below) commonly known as Wilshire Bundy Plaza and located at 12121 Wilshire Boulevard, Los Angeles, California, subject to Bankruptcy Court approval.

On or about November 11, 2009, the Bankruptcy Court entered an order approving the Trustee's Motion to enter an agreement to employ Madison Partners as the exclusive broker to market and sell the Property.

The Title Report (as defined below) lists BD, Bunherst LLC, a Delaware limited liability company ("**BH**") and Tribun LLC, a Delaware limited liability company ("**Tribun**") as the owner of the fee interest in Parcel 3 of the Land (as defined below) and the ground landlord's interest under the Ground Lease (as defined below). BH and Tribun are collectively referred to as the "**Co-Owners of BD**".

The Title Report lists Wilbun 7 LLC, a Delaware limited liability company ("**W7**"), MREA, Wilshire Bundy Holdings LLC, a Delaware limited liability company ("**WBH**"), Bunwil Capital LLC, a Delaware limited liability company ("**BC**") and Civic Palm LLC, a Delaware limited liability company ("**CP**") as the owner of the fee interest in Parcels 1, 2 and 4 of the Land, the Improvements and the ground tenant's interest under the Ground Lease to Parcel 3 of the Property. W7, WBH, BC and CP are collectively referred to as the "**Co-Owners of MREA**". The Co-Owners of BD and the Co-Owners of MREA are collectively referred to as the "**Co-Owners of Debtor**".

OHS West:260803299.9
6826-75

The Parties are informed and believe that EN owns and controls 100% of BD which owns a 67% tenancy-in-common interest in Parcel 3 of the Land and the ground landlord's interest under the Ground Lease.

The Parties are informed and believe that EN owns and controls a 92.5% interest in MREA which owns a 52% tenancy-in-common interest in the Improvements, Parcels 1, 2 and 4 of the Land and the ground tenant's interest under the Ground Lease to Parcel 3 of the Land.

The Title Report states that BD, MREA and the Co-Owners of Debtor collectively own 100% of the Property.

Madison Partners marketed the Property pursuant to the Listing Agreement and received multiple bids from potential buyers and on or about December 1, 2009, requested that 18 prior bidders complete their due diligence and submit "best and final" offers to the Trustee and Madison Partners on or before December 30, 2009.

As a result of Madison Partners marketing efforts, the Trustee selected the Buyer as the stalking horse bidder based upon Buyer's offer to acquire the Property, on the terms and conditions set forth in this Agreement.

The Parties are informed that MREA intends to file a voluntary petition for relief under Chapter 11 of the Bankruptcy Code with the Bankruptcy Court.

The Parties are informed that BD intends to file a voluntary petition for relief under Chapter 11 of the Bankruptcy Code with the Bankruptcy Court.

EN, BD and MREA are collectively referred to as the "**Debtor**".

**IN WITNESS WHEREOF** and for the consideration set forth in this Agreement the adequacy and sufficiency of which is hereby acknowledged, Buyer and Seller desire to enter into this Agreement subject to the terms covenants and agreements set forth herein.

1.   PURCHASE AND SALE

Seller hereby agrees to sell to Buyer, and Buyer hereby agrees to purchase from Seller, subject to the terms, covenants and conditions set forth herein, all of Seller's and the Co-Owners' of MREA and BD's right, title and interest in and to the following property:

(a)     That certain real property located in the City of Los Angeles, County of Los Angeles, State of California, commonly known as Wilshire Bundy Plaza at 12121 Wilshire Boulevard, Los Angeles, California, and more particularly described in *Schedule 1(a)* hereto (the "**Land**");

(b)     The buildings, structures and improvements erected or located on the Land (collectively, the "**Improvements**," and together with the Land, collectively, the "**Premises**");

(c)     Any rights and appurtenances pertaining to the Land, including minerals, oil and gas rights, air, water and development rights, roads, alleys, easements, streets and ways adjacent to the Land, rights of ingress and egress thereto, any strips and gores within or bounding the

Land and in profits or rights or appurtenances pertaining to the Land (the "**Appurtenant Rights**");

(d)    All tangible personal property located on the Premises, including furniture, and equipment, but excluding any of the same owned by Tenants (as defined below) and any tangible personal property described on *Schedule 1(d)* hereto (except for such excluded items, the "**Personal Property**");

(e)    All of those leases listed on *Schedule 1(e)* hereto in effect at the closing of the purchase and sale contemplated hereunder (the "**Closing**"), any guaranties thereof (collectively, the "**Leases**"), and any security deposits and letters of credit held by Seller or the Lenders(as defined below) in respect of such Leases from the tenants thereunder (collectively, the "**Tenants**");

(f)    Those agreements, if any, affecting the Property that are described on *Schedule 1(f)* hereto (collectively, the "**Miscellaneous Agreements**") and those Miscellaneous Agreements that are identified with an asterisk on Schedule 1(f) will be assumed by Buyer and are referred to as the "**Assumed Contracts**";

(g)    All assignable permits and licenses, if any, to the extent the same pertain to the Premises (collectively, the "**Permits**");

(h)    All assignable intangible property, if any, used exclusively in connection with the occupancy and operation of the Premises, including all plans, specifications, books, records, and operating and maintenance manuals (the "**Intangible Property**");

(i)    All assignable warranties, if any, of any contractor, manufacturer or materialman which relate to the Improvements, Premises or the Personal Property (collectively, the "**Warranties**");

(j)    The Ground Lease and all amendments thereto and assignments thereof that are described on *Schedule 1(j)* (collectively, as amended the "**Ground Lease**");

(k)    The WFB Loan as described in Section 2(d) below and WFB Loan Documents as described on Schedule 2(d)-1; and

(l)    The AGL Loan as described in Section 2(d) below and AGL Loan Documents as described on Schedule 2(d)-2.

The Premises, Appurtenant Rights, Personal Property, Leases, Miscellaneous Agreements, Permits, Intangible Property, Ground Lease, AGL Loan and AGL Loan Documents, WFB Loan and WFB Loan Documents and Warranties are herein collectively referred to as the "**Property**."

2.    PURCHASE PRICE; DEPOSIT; ESCROW

(a)    The purchase price ("**Purchase Price**") for the Property shall be Ninety Nine Million Five Hundred Thousand Dollars ($99,500,000.00), subject to adjustment as provided in Section 8 below, and shall be paid as set forth in subparagraphs (b), (c), (d), (f) and (g) below.

OHS West:260803299.9
6826-75

(b)    Within two (2) Business Days after the date on which Buyer and the Trustee have executed and delivered this Agreement (recognizing that MREA and BD will not be executing this Agreement until later as provided below), Buyer shall deposit in escrow with Chicago Title Insurance Company, 700 South Flower Street, Suite 800, Los Angeles, California 90017, Attn: Terri Gervasi (the "**Escrow Holder**"), as an initial deposit hereunder, the sum of Three Million Dollars ($3,000,000.00) (together with all interest from time to time accrued thereon while held by Escrow Holder, the "Initial **Deposit**"). The Initial Deposit shall be non-refundable and shall be deemed fully earned by Seller upon deposit thereof by Buyer with Escrow Holder, subject only to Buyer's rights to obtain a refund as set forth in Sections 6.1, 6.2 (if applicable), 6.3, 7.1, 9.2, and 10(b)(ii).

(c)    Within two (2) Business Days after MREA and BD file the Sales Procedure Motion with the Bankruptcy Court in accordance with Section 6.3 hereof, Buyer shall deposit with Escrow Holder as a second deposit hereunder, the sum of Two Million Dollars ($2,000,000.00) (together with all interest from time to time accrued thereon while held by Escrow Holder, the "Second Deposit"). The Second Deposit shall be non-refundable and shall be deemed fully earned by Seller upon deposit thereof by Buyer with Escrow Holder, subject only to Buyer's rights to obtain a refund as set forth in Sections 6.1, 6.2, (if applicable), 6.3, 7.1, 9.2, and 10(b)(ii).

(d)    On or before the date required of all qualified bidders to make required deposits pursuant to the Sales Procedure Order (as defined in Section 6.3(a) below), Buyer shall deposit with Escrow Holder as its final deposit hereunder, the sum of Five Million Dollars ($5,000,000.00) (together with all interest from time to time accrued thereon while held by Escrow Holder, the "Final Deposit"). The Final Deposit shall be non-refundable and shall be deemed fully earned by Seller upon deposit thereof by Buyer with Escrow Holder, subject only to Buyer's rights to obtain a refund as set forth in Sections 6.1, 6.2, (if applicable), 6.3, 7.1, 9.2 and 10(b)(ii). The Initial Deposit, Second Deposit and Final Deposit are collectively referred to as the "Deposit".

(e)    The Deposit shall at all times while held by Escrow Holder be invested in an interest-bearing account approved by Buyer and Seller in writing. Buyer shall provide the Escrow Holder with its taxpayer identification number, and all interest earned on the Deposit shall be reported to the appropriate tax authorities using Buyer's taxpayer identification number. Unless refunded to Buyer or delivered to Seller pursuant to the terms of this Agreement, at the Closing, the Deposit shall be credited and applied toward payment of the Purchase Price.

(f)    A portion of the Purchase Price shall be evidenced by Buyer's or its Permitted Assignee's (as defined in Section 13 of this Agreement) assumption, effective upon the Closing, of all indebtedness (the total amount of such indebtedness as of the Closing Date is referred to herein as the "**Assumption Amount**") (i) evidenced by that certain Promissory Note dated March 30, 2006, executed by **W7, MREA, WBH, CP,** and **BC** (BC together with W7, MREA, WBH and CP, the "**WFB Borrower**"), in favor of Wells Fargo Bank, N.A., as trustee for the registered holders of J.P. Morgan Chase Commercial Mortgage Securities Corp., Commercial Mortgage Pass-Through Certificates, Series 2006-LDP7 ("**WFB**"), as successor (by assignment recorded March 31, 2006, as Instrument No. 06-0691169 in the Official Records of Los Angeles County, California (the "**Official Records**")) to GMAC Commercial Mortgage Bank ("**GMACC**") in the original principal amount of $60,030,000.00 (the "**WFB Note**"), which Note

was initially delivered to GMACC pursuant to that certain Loan Agreement of even date therewith by and among the WFB Borrower and GMACC (the "**WFB Loan Agreement**" and the loan contemplated and provided for therein, the "**WFB Loan**") and secured by, among other things, that certain Deed of Trust dated March 30, 2006, executed by the WFB Borrower in favor of GMACC (as initial beneficiary) and recorded on March 31, 2006, as Instrument No. 06-0691169 in the Official Records (the "**WFB Deed of Trust**," and, together with the WFB Note, WFB Loan Agreement and other documents evidencing and/or relating to the WFB Loan evidenced by the Note which are described on *Schedule 2(d)-1* hereto, the "**WFB Loan Documents**"), and (ii) evidenced by that certain promissory note dated February 20, 2007, executed by BH, Tribun, and BD (BD together with BH and Tribun, the "**AGL Borrower**"), in favor of American General Life and Accident Insurance Company ("**AGL**") in the original principal amount of $10,000,000.00 (the "**AGL Note**"), which AGL Note was delivered to AGL (the loan contemplated and provided for therein, the "**AGL Loan**") and secured by, among other things, that certain deed of trust dated February 20, 2007, executed by AGL Borrower in favor of AGL and recorded on February 21, 2007, as 20070370603 in the Official Records (the "**AGL Deed of Trust**," and, together with the AGL Note, and other documents evidencing and/or relating to the AGL Loan evidenced by the AGL Note which are described on *Schedule 2(d)-2* hereto, the "**AGL Loan Documents**"). Buyer hereby agrees that Buyer and Trustee shall complete and submit to WFB or its servicer the loan assumption package relating to the WFB Loan and to AGL or its servicer the loan assumption package relating to the AGL Loan, as provided to Buyer by Trustee, together with all information required of Buyer or contemplated by such assumption packages of Buyer and Trustee shall provide all information required of or contemplated regarding Seller or the Property. In connection with the assumption of the Loans, Buyer will provide a new guarantor (the "**Replacement Guarantor**") to execute a commercially reasonable non-recourse carveout guaranty and an environmental indemnity ("**New Non-Recourse Carveout Guaranty**" and "**New Environmental Indemnity**") for each of the AGL Loan and the WFB Loan, which guarantor's net worth shall be no less than the outstanding principal balance of the Loans. Buyer shall use commercially reasonable efforts to obtain WFB's and AGL's approval of the transfers and assumptions of the WFB Loan and AGL Loan contemplated herein, which efforts shall include, without limitation, submitting the ownership structure of Buyer and Guarantor and financial information reasonably requested by the Lenders to verify the Replacement Guarantor's Net Worth. The Trustee shall cooperate in Buyer's efforts to obtain such approval by submitting all financial and property information reasonably requested by the Lenders. At the Closing, Buyer shall bear and pay all amounts payable to WFB and AGL as a fee, in reimbursement of WFB's and AGL's fees and costs, or the like in connection with Buyer's or its Permitted Assignee's assumption of the AGL Loan and WFB Loan as contemplated herein; provided, however, Buyer shall not be required to pay any fees or costs incurred by WFB or AGL in connection with the submission to WFB or AGL of any loan assumption package by any other bidder or any late charges, default interest or other costs or expenses asserted by Lender as a result of any Debtor or Co-Owner Default, if any. The Seller acknowledges that as a result of the Ground Lease structure and different collateral and requirements for the WFB Loan and AGL Loan, the Buyer may be required to form one (1) or more separate title holding entities in compliance with Section 13 of this Agreement. Buyer or one such Permitted Assignee will acquire the WFB Loan and all the Property that comprises the collateral securing the WFB Loan. Buyer or the other Permitted Assignee will acquire the AGL Loan and all of the Property that comprises the collateral securing the AGL Loan. AGL and WFB are collectively referred to as the "**Lenders**". The AGL Loan and WFB Loan are

collectively referred to as the "**Loans**" and the AGL Loan Documents and WFB Loan Documents are collectively referred to as the "**Loan Documents**".

(g)    The balance of the Purchase Price (that is, the amount of the Purchase Price over and above the amount of the Deposit plus the Assumption Amount), subject to adjustment for any prorations, credits and reimbursements provided hereunder, shall be deposited with Escrow Holder by Buyer at least one (1) business day before the Closing by wire transfer of immediately available funds, for disbursement pursuant to the terms hereof, with the transfer of funds to Seller to be completed on the day of the Closing in accordance with the terms of the Sale Order that is entered by the Bankruptcy Court as required by Section 6.3 of this Agreement.

(h)    Within two (2) business days following the Effective Date, Seller shall deliver a copy of this Agreement to Escrow Holder. This Agreement shall serve as the initial escrow instructions. Counsel for Buyer and Seller are hereby authorized to execute any further escrow instructions reasonably necessary or desirable, and consistent with the terms hereof, in connection with the escrow established for this Transaction by Escrow Holder (the "**Escrow**"). Escrow Holder shall be the "**Reporting Person**" pursuant to Internal Revenue Code Section 6045(e) with respect to the Transaction.

3.    BUYER'S ACKNOWLEDGMENT RE FULL INVESTIGATION

Subject to satisfaction of the Closing conditions set forth in Sections 6.1 and 6.3, Buyer hereby acknowledges that Buyer has had the opportunity to conduct and obtain, and has conducted and obtained, either directly or through its Agents, all inspections, investigations, reviews, analyses, studies, assessments, reports, appraisals, evaluations and other diligence (collectively, "**Diligence**") Buyer deemed necessary to conduct or obtain with respect to the Property and all aspects thereof, including, without limitation, such Diligence as Buyer deemed necessary to obtain or conduct with respect to the title of the Property, the Leases and the physical and environmental condition of the Property and the scope of investigation to review and approve all matters relating to the Property. The Buyer's Diligence included the review of all Leases, Loan Documents, contracts and agreements, reports, surveys and other due diligence material (collectively, "**Due Diligence Documents**") that were posted on Madison Partners' website for the Property as of January 6, 2010 or that are listed on *Schedule 3*.

4.    AS-IS SALE; RELEASE AND INDEMNITY

4.1    *As-Is Sale*

(a)    Except with respect to any representations and covenants expressly made by Seller in this Agreement, Seller: (i) makes no representations or warranties concerning the Property, income derived therefrom or any matters pertaining thereto; and (ii) makes no representations or warranties with respect to the physical condition or any other aspect of the Property, including, without limitation: (A) the structural integrity of, or the quality of any labor and materials used in the construction of, any improvements on the Land; (B) the conformity of the Improvements to any plans or specifications for the Property (including any plans and specifications that may have been or which may be provided to Buyer by Seller); (C) the compliance of the Property or its operation with any applicable codes, laws, regulations, statutes, ordinances, covenants, conditions and restrictions of any governmental or quasi-governmental

entity or of any other person or entity, including zoning or building code requirements; (D) the existence of soil instability, past soil repairs, soil additions or conditions of soil fill or susceptibility to landslides; (E) the sufficiency of any undershoring; (F) the sufficiency of any drainage; (G) whether the Land is located wholly or partially in any flood plain or flood hazard boundary or similar area; (H) the existence or non-existence of underground storage tanks; (I) any other matter affecting the stability or integrity of the Land or any buildings or improvements situated on or as part of the Improvements; (J) the availability, quality, nature, adequacy and physical condition of public utilities and services for the Property; (K) the habitability, merchantability, fitness, suitability, functionality, value or adequacy of the Property or any component or system thereof for any intended use; (L) the potential for further development of the Property; (M) the existence of vested land use, zoning or building entitlements affecting the Premises; (N) the quality, nature, adequacy and physical condition of the Property, including the structural elements, foundations, roofs, appurtenances, access, landscaping, parking facilities and the electrical, mechanical, HVAC, plumbing, sewage, and utility systems, facilities and appliances; (O) the quality and nature of any groundwater; (P) the zoning or other legal status of the Property or any other public or private restrictions on use of the Property; (Q) the presence of any Hazardous Materials (as defined below) or mold or any mold-like substance on, in, under or about the Property or any nearby property; (R) the condition of title to the Property; (S) the Leases, Miscellaneous Agreements, or other agreements affecting the Property; and (T) the economics of the operation of the Property. Except with respect to any representations expressly made by Seller in this Agreement, Buyer expressly acknowledges that the Property is being sold and accepted "as is, where is" and is being accepted without any representation or warranty, including any representation or warranty by Seller or any agent, officer, employee or representative of Seller. Buyer agrees to make such investigations of the condition of the Property as Buyer deems adequate and shall rely solely upon its own investigation of such condition and not upon any statement of Seller except as may be expressly stated in this Agreement. As used herein, "**Hazardous Materials**" means any material, substance or waste designated as hazardous, toxic, radioactive, injurious or potentially injurious to human health or the environment, or as a pollutant or contaminant, or words of similar import, under any Hazardous Materials Law (as defined below), including, but not limited to, petroleum and petroleum products, asbestos, polychlorinated biphenyls, urea formaldehyde, radon gas, radioactive matter, medical waste, mold, and chemicals which may cause cancer or reproductive toxicity. As used herein, "**Hazardous Materials Law**" means any federal, state or local law, statute, regulation or ordinance now or hereafter in force, as amended from time to time, pertaining to materials, substances or wastes which are injurious or potentially injurious to human health or the environment or the release, disposal or transportation of which is otherwise regulated by any agency of the federal, state or any local government with jurisdiction over the Property or any such material, substance or waste removed therefrom, or in any way pertaining to pollution or contamination of the air, soil, surface water or groundwater, including, but not limited to, the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended (42 U.S.C. Section 9601 *et seq.*), the Resource Conservation and Recovery Act of 1976 (42 U.S.C. Section 6901 *et seq.*), the Clean Water Act (33 U.S.C. Section 1251 *et seq.*), the Safe Drinking Water Act (42 U.S.C. Section 300f *et seq.*), the Hazardous Materials Transportation Act (49 U.S.C. Section 1801 *et seq.*), the Toxic Substance Control Act (15 U.S.C. Section 2601 *et seq.*), the Hazardous Substance Account Act (California Health and Safety Code Section 25300 *et seq.*), the Hazardous Waste Control Law (California Health and Safety Code Section 25100 *et seq.*), the Medical Waste Management Act (California Health and Safety Code