1  RICHARD K. DIAMOND (State Bar No. 070634)
   rdiamond@dgdk.com
2  WALTER K. OETZELL (State Bar No. 109769)
   woetzell@dgdk.com
3  STEVEN J. SCHWARTZ (State Bar No. 200586)
   sschwartz@dgdk.com
4  DANNING, GILL, DIAMOND & KOLLITZ, LLP
   2029 Century Park East, Third Floor
5  Los Angeles, California 90067-2904
   Telephone:  (310) 277-0077
6  Facsimile:  (310) 277-5735

7  Reorganization Counsel for
   Mission Real Associates, LLC, Bundy Dimes, LLC and
8  Bunwil Capital, LLC, Debtors and Debtors-in-Possession

9               **UNITED STATES BANKRUPTCY COURT**

10              **CENTRAL DISTRICT OF CALIFORNIA**

11                  **LOS ANGELES DIVISION**

| | |
|---|---|
| 12  In re | ) Case No. 2:10-bk-22370-BR |
| 13  MISSION REAL ASSOCIATES, LLC, | ) Chapter 11 |
| 14        Debtor. | ) |
| 15 _____ | ) |
| 16  In re | ) Case No. 2:10-bk-22153-BR |
|      BUNWIL CAPITAL, LLC | ) Chapter 11 |
| 17        Debtor. | ) |
| 18 _____ | ) |
| 19  In re | ) Case No. 2:10-bk-22149-BR |
| 20  BUNDY DIMES, LLC | ) Chapter 11 |
| 21        Debtor. | ) **DEBTORS' DISCLOSURE STATEMENT** |
| 22 | ) **DESCRIBING JOINT CHAPTER 11** |
|    | ) **PLAN OF REORGANIZATION** |
| 23 | ) **Disclosure Statement Hearing:** |
| 24 | ) Date:  December 14, 2010 (status hearing) |
|    | ) Time:  10:00 a.m. |
| 25 | ) Ctrm:  "1668" |
|    | )         255 E. Temple Street |
| 26 | )         Los Angeles, California |
| 27 | ) **Plan Confirmation Hearing:** |
|    | ) Date:     [TO BE SET] |
|    | ) Time: |
| 28 _____ | ) Ctrm: |

-1-

361460.02 [XP]    25431

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ...............................................................................................2

    A.    Purpose of This Document ........................................................................3

    B.    Deadlines for Voting and Objecting; Date of Plan Confirmation
        Hearing ....................................................................................................4

        1.    Time and Place of the Confirmation Hearing ...............................4

        2.    Deadline For Voting For or Against the Plan ...............................4

        3.    Deadline For Objecting to the Confirmation of the Plan .............4

        4.    Identity of Person to Contact for More Information Regarding
            the Plan .........................................................................................5

    C.    Disclaimer ................................................................................................5

II.    DEFINITIONS AND INTERPRETATION .......................................................6

    A.    DEFINITION OF TERMS .......................................................................6

        1.    Administrative Claim ....................................................................6

        2.    Allowed .........................................................................................7

        3.    Avoidance Actions .......................................................................7

        4.    Bankruptcy Code ..........................................................................7

        5.    Bankruptcy Rules .........................................................................7

        6.    Buyer ............................................................................................7

        7.    Business Day .................................................................................8

        8.    Cash ..............................................................................................8

        9.    Cause of Action ............................................................................8

        10.    Chapter 11 Cases ..........................................................................8

        11.    Claim .............................................................................................8

        12.    Claims Bar Date ............................................................................8

        13.    Class .............................................................................................8

        14.    Collateral ......................................................................................9

        15.    Competing Equity Claims .............................................................9

-i-

## TABLE OF CONTENTS (cont.)

Page

16.   Competing Interests Reserve Accounts ...................................................9

17.   Confirmation Date ......................................................................................9

18.   Confirmation Hearing ................................................................................9

19.   Confirmation Order ...................................................................................9

20.   Court ..............................................................................................................9

21.   Debtors........................................................................................................10

22.   Debtors' Counsel ......................................................................................10

23.   Debtors-in-Possession..............................................................................10

24.   Dimes ..........................................................................................................10

25.   Disallowed Claim or Interest .................................................................10

26.   Disbursing Agent ......................................................................................10

27.   Disclosure Statement ...............................................................................10

28.   Disputed .....................................................................................................10

29.   Disputed Claims Reserve.........................................................................11

30.   Disputed Claims Reserve Account ........................................................11

31.   Distribution ...............................................................................................11

32.   Effective Date ............................................................................................11

33.   Estates ........................................................................................................12

34.   Federal Judgment Rate ............................................................................12

35.   File or Filed.................................................................................................12

36.   Final Decree...............................................................................................12

37.   Final Order .................................................................................................12

38.   General Unsecured Claim........................................................................12

39.   Holder .........................................................................................................12

40.   Impaired .....................................................................................................12

41.   Insider .........................................................................................................13

-ii-

### TABLE OF CONTENTS (cont.)

**Page**

42.  Interest ........................................................................................................ 13

43.  Local Bankruptcy Rules ............................................................................ 13

44.  Namco .......................................................................................................... 13

45.  Namvar Trustee .......................................................................................... 13

46.  Order ............................................................................................................ 13

47.  Person .......................................................................................................... 13

48.  Petition Date ............................................................................................... 13

49.  Plan ............................................................................................................... 14

50.  Priority Claim ............................................................................................. 14

51.  Priority Tax Claim ..................................................................................... 14

52.  Proceeds ....................................................................................................... 14

53.  Professional ................................................................................................. 14

54.  Reorganized Debtors .................................................................................. 14

55.  Reserved Claims ......................................................................................... 14

56.  Scheduled ..................................................................................................... 15

57.  Schedules ..................................................................................................... 15

58.  Secured Claim ............................................................................................. 15

59.  Surplus ......................................................................................................... 15

60.  Unclaimed Distributions .......................................................................... 15

61.  Unimpaired .................................................................................................. 15

62.  Unsecured Claim ........................................................................................ 15

63.  U.S. Trustee ................................................................................................ 16

64.  Wilshire Bundy Property .......................................................................... 16

B.  RULES OF INTERPRETATION & COMPUTATION OF TIME ...................... 16

1.  Defined Terms ............................................................................................. 16

2.  Rules of Interpretation ............................................................................. 16

-iii-

### TABLE OF CONTENTS (cont.)

| | | | | Page |
|---|---|---|---|---|
| | | 3. | Time Periods | 17 |
| III. | | PRE-PETITION FACTUAL BACKGROUND | | 17 |
| | A. | Description of the Debtors' Businesses | | 17 |
| | B. | Principals/Affiliates of the Debtors | | 18 |
| | C. | Claims Against the Debtors | | 18 |
| | D. | Events Leading to Chapter 11 Filing | | 19 |
| | E. | Significant Events Subsequent to Bankruptcy Filing | | 19 |
| | F. | Employment of Professionals | | 20 |
| IV. | | SUMMARY OF THE PLAN OF REORGANIZATION | | 21 |
| V. | | CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS | | 21 |
| | A. | General Overview | | 21 |
| | B. | Unclassified Claims | | 21 |
| | | 1. | Administrative Claims | 21 |
| | | 2. | Post-Confirmation U.S. Trustee Fees | 23 |
| | | 3. | Ordinary Course Liabilities | 23 |
| | | 4. | Priority Tax Claims | 23 |
| | C. | Classified Claims and Interests | | 24 |
| | | 1. | Classes of Secured Claims | 24 |
| | | 2. | Class of General Unsecured Claims | 25 |
| | | 3. | Class of Interest Holders | 25 |
| | D. | Means of Performing the Plan | | 26 |
| | | 1. | Funding for the Plan | 26 |
| | | 2. | Post-Confirmation Management | 26 |
| | | 3. | Disbursing Agent | 26 |
| | | 4. | Claims/Interests | 27 |
| | | 5. | Objections to Claims and/or Interests | 27 |

-iv-

## **TABLE OF CONTENTS (cont.)**

**Page**

6.    Claims Bar Date and Disallowance of Late-Filed Claims..........................27

7.    Disputed Claims Reserve.................................................................................27

8.    Distribution of Surplus ...................................................................................28

9.    Additional Distributions .................................................................................30

10.    Unclaimed Distributions.................................................................................31

VI.  TREATMENT OF MISCELLANEOUS ITEMS......................................................32

  A.    Executory Contracts and Unexpired Leases .................................................32

  B.    Retention of Jurisdiction...............................................................................32

  C.    Authority to Execute Documents..................................................................34

  D.    Limitations of Liability.................................................................................34

  E.    Post-Confirmation Employment and Compensation of Professionals ..................34

  F.    Disposition of Non-Cash Property................................................................34

  G.    Reserved Claims ...........................................................................................35

VII.  EFFECT OF CONFIRMATION OF PLAN...........................................................36

  A.    Discharge .......................................................................................................36

  B.    Revesting of Property in the Debtors............................................................36

  C.    Modification of Plan .....................................................................................36

  D.    Post-Confirmation Status Report..................................................................36

  E.    Post-Confirmation Conversion/Dismissal ....................................................37

  F.    Withdrawal or Revocation ............................................................................37

  G.    Successors and Assigns .................................................................................37

  H.    Severability...................................................................................................37

  I.    Governing Law ..............................................................................................38

  J.    Headings .......................................................................................................38

  K.    Notices ..........................................................................................................38

  L.    Dissolution of Debtor ...................................................................................38

-v-

361460.02 [XP]    25431

## **TABLE OF CONTENTS (cont.)**

**Page**

| | | | |
|---|---|---|---|
| | M. | Conflict | 39 |
| | N. | Final Decree | 39 |
| VIII. | | LIQUIDATION ANALYSIS | 40 |
| IX. | | CERTAIN FEDERAL INCOME TAX CONSEQUENCES | 41 |
| | A. | Introduction | 42 |
| | B. | Consequences to Holders of Allowed Administrative Expense Claims, Allowed Priority Tax Claims, and Allowed Priority Wage Claims | 42 |
| | C. | Holders of Allowed General Unsecured Claims | 42 |
| | D. | Interests | 43 |
| | E. | Distributions on Account of Accrued Post-Petition Interest | 43 |
| | F. | Information Reporting and Withholding | 43 |
| X. | | CONFIRMATION REQUIREMENTS AND PROCEDURES | 44 |
| | A. | Who May Vote or Object | 44 |
| | | 1. Who May Object to Confirmation of the Plan | 44 |
| | | 2. Who May Vote to Accept/Reject the Plan | 45 |
| | | 3. Who is Not Entitled to Vote | 46 |
| | | 4. Who Can Vote in More Than One Class | 46 |
| | | 5. Votes Necessary to Confirm the Plan | 46 |
| | | 6. Votes Necessary for a Class to Accept the Plan | 46 |
| | | 7. Treatment of Nonaccepting Classes | 47 |
| | | 8. Request for Confirmation Despite Nonacceptance by Impaired Class(es) | 47 |
| XI. | | CONCLUSION | 47 |

361460.02 [XP]    25431

# I.

## **INTRODUCTION**

Mission Real Associates, LLC ("Mission"), Bundy Dimes, LLC ("Bundy") and Bunwil Capital, LLC ("Bunwil") are the Debtors in Chapter 11 bankruptcy cases (collectively, the "Debtors" or the "Plan Proponents"). On March 31, 2010, the Debtors commenced bankruptcy cases by filing a voluntary Chapter 11 petitions under the Bankruptcy Code.

Chapter 11 allows the Debtors, and, under some circumstances, creditors and other parties in interest, to propose a plan of reorganization ("Plan"). The Plan may provide for the Debtors to reorganize by continuing to operate, to liquidate by selling assets of the estate, or a combination of both. The Debtor is the party proposing the Plan sent to you in the same envelope as this document. THE DOCUMENT YOU ARE READING IS THE DISCLOSURE STATEMENT FOR THE ENCLOSED PLAN.

The proposed Plan is a liquidation plan. In other words, the Plan Proponent seeks to accomplish payments under the Plan by distributing proceeds of the sale of substantially all of the assets of the estate, which sale has already occurred. The funding for the Plan will come from the Debtors' interests in proceeds from the sale of the Wilshire Bundy Property (defined below), liquidation of non-Cash assets, and Cash on hand in the bankruptcy estate as of the Effective Date of the Plan. These are Surplus Chapter 11 Cases. The Debtors anticipate that they will have sufficient cash to pay all Allowed Claims (and reserve for all Disputed Claims) plus post-petition interest as allowable by law on the Effective Date of the Plan. Accordingly, there are no Impaired Classes of Creditors in the Plan. The Plan also provides for distributions to Interest Holders in accordance with their respective interests and reservation of the distributions to Interest Holders in instances where there are competing Claims as to those Interests.

The Effective Date of the proposed Plan is the fifteenth day following the occurrence of all of the following conditions: (1) the Confirmation Order in a form satisfactory to the Debtors shall have become a Final Order; and (2) all other actions and documents necessary to implement the treatment of creditor Claims shall have been effected or executed or, if waivable, waived by the Debtors.

-2-

1    In the event an appeal of the Confirmation Order is taken and a stay pending appeal is

2  obtained, consummation of the Plan will be delayed pending the appeal.  Absent a stay pending

3  appeal of the Confirmation Order, the Debtors will proceed forward to consummate the Plan.

4  **A.    Purpose of This Document**

5    This Disclosure Statement summarizes what is in the Plan, and tells you certain information

6  relating to the Plan and the process the Court follows in determining whether or not to confirm the

7  Plan.

8    **READ THIS DISCLOSURE STATEMENT CAREFULLY IF YOU WANT TO**

9  **KNOW ABOUT:**

10    (1)    WHO CAN VOTE OR OBJECT,

11    (2)    WHAT THE TREATMENT OF YOUR CLAIM IS (i.e., what your claim will

12  receive if the Plan is confirmed), AND HOW THIS TREATMENT COMPARES TO WHAT

13  YOUR CLAIM WOULD RECEIVE IN LIQUIDATION,

14    (3)    THE HISTORY OF THE DEBTOR AND SIGNIFICANT EVENTS DURING THE

15  BANKRUPTCY,

16    (4)    WHAT THINGS THE COURT WILL LOOK AT TO DECIDE WHETHER OR

17  NOT TO CONFIRM THE PLAN,

18    (5)    WHAT IS THE EFFECT OF CONFIRMATION, AND

19    (6)    WHETHER THE PLAN IS FEASIBLE.

20    This Disclosure Statement cannot tell you everything about your rights.  You should

21  consider consulting your own lawyer to obtain more specific advice on how the Plan will affect you

22  and what is the best course of action for you.

23    Be sure to read the Plan as well as the Disclosure Statement.  If there are any

24  inconsistencies between the Plan and the Disclosure Statement, the Plan provisions will govern.

25    The Code requires a Disclosure Statement to contain "adequate information" concerning the

26  Plan.  The Bankruptcy Court has approved this document as an adequate Disclosure Statement,

27  containing enough information to enable parties affected by the Plan to make an informed

28  judgment about the Plan.  Any party can now solicit votes for or against the Plan, assuming the

361460.02 [XP]    25431

1   statements and contentions contained in this document are accurate.  However, the Court has not

2   yet determined the accuracy of such statements or contentions, and may do so at the hearing

3   regarding confirmation of the Plan.

4   **B.     Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing**

5        THE COURT HAS NOT YET CONFIRMED THE PLAN DESCRIBED IN THIS

6   DISCLOSURE STATEMENT. IN OTHER WORDS, THE TERMS OF THE PLAN ARE NOT

7   YET BINDING ON ANYONE.  HOWEVER, IF THE COURT LATER CONFIRMS THE PLAN,

8   THEN THE PLAN WILL BE BINDING ON THE DEBTORS AND ON ALL CREDITORS AND

9   INTEREST HOLDERS IN THIS CASE.

10       **1.     Time and Place of the Confirmation Hearing**

11       The hearing where the Court will determine whether or not to confirm the Plan will take

12  place on _____, at _____ in Courtroom 1668, United States Bankruptcy Court, 255 East

13  Temple Street, Los Angeles, California 90012.

14       **2.     Deadline For Voting For or Against the Plan**

15       The Plan does not contain any Impaired Classes of Creditors.  The Plan does contain

16  Impaired Classes of Interest Holders.  Ballots will be enclosed with this Disclosure Statement only

17  as to any Impaired Classes of Interest Holders.  If you are entitled to vote, it is in your best interest

18  to timely vote on the enclosed ballot and return the ballot in the enclosed envelope to Steven J.

19  Schwartz, Danning, Gill, Diamond & Kollitz, LLP, 2029 Century Park East, Third Floor,

20  Los Angeles, California, (310) 277-0077, or by fax to (310) 277-5735.

21       Your ballot must be received by _____ or it will not be counted.

22       **3.     Deadline For Objecting to the Confirmation of the Plan**

23       Objections to the confirmation of the Plan must be filed with the Court and served, such

24  that it is actually received by _____, upon: (a) Steven J. Schwartz, Danning, Gill, Diamond

25  & Kollitz, LLP, 2029 Century Park East, Third Floor, Los Angeles, California, who is counsel to

26  the Debtor; and (b) The Office of the United States Trustee, 725 S. Figueroa St., Suite 2600, Los

27  Angeles, CA 92701.

28  ///

-4-

361460.02 [XP]     25431

**4.    Identity of Person to Contact for More Information Regarding the Plan**

Any interested party desiring further information about the Plan should contact Debtors' counsel Steven J. Schwartz, Esq., Danning, Gill, Diamond & Kollitz, LLP, 2029 Century Park East, Third Floor, Los Angeles, California, (310) 277-0077.

**C.    Disclaimer**

The financial data relied upon in formulating the Plan is based on the Debtors' books and records, financial statements, cash flow projections, appraisals, and evaluations. The information contained in this Disclosure Statement is provided by the Debtors. The Plan Proponent represents that everything stated in the Disclosure Statement is true to the Plan Proponent's best knowledge. The Court has not yet determined whether or not the Plan is confirmable and makes no recommendation as to whether or not you should support or oppose the Plan.

The discussion in this Disclosure Statement regarding the Debtors may contain "forward looking statements" within the meaning of the Private Securities Litigation Reform Act of 2005. Such statements consist of any statement other than a recitation of historical fact and can be identified by the use of forward-looking terminology such as "may," "expect," "anticipate," "estimate," or "continue," or the negative thereof or other variations thereon or comparable terminology. The reader is cautioned that all forward looking statements are necessarily speculative and there are certain risks and uncertainties that could cause actual events or results to differ materially from those referred to in such forward looking statements. The liquidation analysis, distribution projections, and other information are estimates only, and the timing and amount of actual distributions to creditors may be affected by many factors that cannot be predicted. Therefore, any analyses, estimates, or projections may or may not turn out to be accurate.

The Debtors and their professionals have made a diligent effort to identify in this Disclosure Statement all litigation claims, including claims for relief, counterclaims, and objections to claims. However, no reliance should be placed on the fact that a particular litigation claim is or is not identified in this Disclosure Statement. The Debtors or other parties in interest may seek to

///

-5-

361460.02 [XP]    25431

1  investigate, file and prosecute litigation claims after the confirmation or Effective Date of the Plan

2  whether or not the litigation claims are identified in this Disclosure Statement.

3      This document is the Joint Chapter 11 Plan proposed by the Debtors.  Sent to you in the

4  same envelope as this document is the Joint Disclosure Statement Describing Joint Plan of

5  Reorganization, which was approved by the Court by order entered _____, and which is

6  provided to help you understand the Plan.

7

8                                        **II.**

9                    **DEFINITIONS AND INTERPRETATION**

10  **A.    DEFINITION OF TERMS**

11      Unless otherwise defined herein, or the context otherwise requires, the following terms shall

12  have the respective meanings set forth below.  Any term used in the Plan that is not defined herein

13  but is defined in the Bankruptcy Code or the Bankruptcy Rules retains the meaning specified for

14  such term in the Bankruptcy Code or the Bankruptcy Rules.

15      **1.    Administrative Claim**

16      The term "Administrative Claim" means any right to payment constituting a cost or expense

17  of administration of the Chapter 11 Cases of a kind specified under Section 503(b) and entitled to

18  priority under Section 507(a)(2) of the Bankruptcy Code, including, without limitation, any actual

19  and necessary costs and expenses of preserving the Estates of the Debtors, any actual and necessary

20  costs and expenses of operating the respective business of the Debtors, any indebtedness or

21  obligations incurred or assumed by the Debtors in connection with the conduct of their respective

22  businesses, including, without limitation, all compensation and reimbursement of expenses to the

23  extent Allowed by the Court under Section 330 or 503 of the Bankruptcy Code, and any fees or

24  charges assessed against the Estates of the Debtors under Section 1930 of chapter 123 of Title 28 of

25  the United States Code.

26  ///

27  ///

28  ///

361460.02 [XP]    25431

1   **2.   Allowed**

2       The term "Allowed" means, with respect to a Claim, proof of which was timely and

3   properly filed or, if no proof of Claim was filed, which has been or hereafter is listed by the

4   Debtors on their Schedules as liquidated in amount and not Disputed or contingent and, in either

5   case, as to which no objection to allowance has been interposed on or before the expiration of the

6   time within which to object to such Claim as set forth herein or such other applicable period of

7   limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or as to

8   which any objection has been determined by a Final Order to the extent such objection is

9   determined in favor of the respective holder.  Unless otherwise specified in this Plan or by order of

10  the Bankruptcy Court, "Allowed Claim" shall not, for purposes of computation of distributions

11  under this Plan, include interest on such Claim from and after the Petition Date or include any

12  portion of the Claim which would be subject to Bankruptcy Code Section 726(a)(4) if the case were

13  a Chapter 7.

14      **3.   Avoidance Actions**

15      The term "Avoidance Actions" means all Causes of Action and rights held by the Estates

16  pursuant to Bankruptcy Code Sections 542, 544, 545, 547, 548, 549, 550, 551, 553(b) and 724(a).

17      **4.   Bankruptcy Code**

18      The term "Bankruptcy Code" or "Code" means Title 11 of the United States Code, 11

19  U.S.C. §§ 101 et seq., as in effect on the date hereof or hereafter amended if such amendments are

20  made applicable to the Chapter 11 Cases.

21      **5.   Bankruptcy Rules**

22      The term "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure as

23  promulgated by the United States Supreme Court under Section 2075 of Title 28 of the United

24  States Code, and local rules of the Court, as the context may require.

25      **6.   Buyer**

26      The term "Buyer" means DEI X partnership REIT, LP and its permitted assignee(s).

27  ///

28  ///

361460.02 [XP]    25431

7.    **Business Day**

The term "Business Day" means any day on which commercial banks are open for business, and not authorized to close, in the City of Los Angeles, California, except any day designated as a legal holiday in Bankruptcy Rule 9006(a).

8.    **Cash**

The term "Cash" means legal tender of the United States of America and equivalents thereof.

9.    **Cause of Action**

The term "Cause of Action" means the claims, rights of action, suits, or proceedings, whether in law or in equity, whether known or unknown, that the Debtors or their Estates may hold against any Person, which are to be retained by the Debtors and litigated and liquidated by the Disbursing Agent in the name of the Debtors pursuant to the Plan.

10.    **Chapter 11 Cases**

The term "Chapter 11 Cases" means the Chapter 11 Cases of the Debtors.

11.    **Claim**

The term "Claim" means a Claim against the Debtors, whether or not asserted or Allowed, as defined in Section 101(5) of the Bankruptcy Code.

12.    **Claims Bar Date**

The term "Claims Bar Date" means December 1, 2010, which is the date established by the Bankruptcy Court as the last date for timely filing in the Chapter 11 cases: (1) proofs of claim on account of pre-petition claims; (2) administrative claims, including reclamation claims under 11 U.S.C. § 503(b)(9), other than with regard to administrative claims of professionals duly retained in the Chapter 11 cases; (3) proofs of Interests; and (4) Claims of governmental units.  The exceptions to this deadline for filing proofs of Claims or Interests are: (1) Claims arising from rejection of executory contracts or unexpired leases; and (2) Claims arising as the result of transfer avoidance pursuant to Chapter 5 of the Bankruptcy Code.

13.    **Class**

The term "Class" means a class of Claims or Interests designated pursuant to the Plan.

-8-

1   **14.   Collateral**

2       The term "Collateral" means any property or interest in property of the Debtors' Estates

3   subject to a lien to secure the payment or performance of a Claim as of the Petition Date, which

4   lien is not subject to avoidance under the Bankruptcy Code or applicable non-bankruptcy law or

5   otherwise invalid under the Bankruptcy Code or applicable non-bankruptcy law.

6   **15.   Competing Equity Claims**

7       The term "Competing Equity Claims" collectively refers to any competing liens, claims or

8   interests asserted against the Interest Holders as to their Interests in the Debtors.

9   **16.   Competing Interests Reserve Accounts**

10      The term "Competing Interests Reserve Accounts" means deposit accounts, interest bearing

11  if possible, opened by the Disbursing Agent at an F.D.I.C. insured depository institution into which

12  shall be deposited Cash representing the Surplus on account of Competing Equity Claims.

13  **17.   Confirmation Date**

14      The term "Confirmation Date" means the date on which the Confirmation Order is entered

15  by the Court.

16  **18.   Confirmation Hearing**

17      The term "Confirmation Hearing" means the hearing to consider confirmation of the Plan

18  pursuant to Section 1128 of the Bankruptcy Code.

19  **19.   Confirmation Order**

20      The term "Confirmation Order" means the order entered by the Court confirming the Plan

21  pursuant to Section 1129 of the Bankruptcy Code.

22  **20.   Court**

23      The term "Court" means, (a) the United States Bankruptcy Court for the Central District of

24  California (Los Angeles Division), located at 255 East Temple Street, Los Angeles, California,

25  having jurisdiction over the Chapter 11 Cases; (b) to the extent there is no reference pursuant to

26  Section 157 of Title 28 of the United States Code, the United States District Court for the Central

27  District of California; and (c) any other court having jurisdiction over the Chapter 11 Cases.

28  ///

-9-

361460.02 [XP]     25431

**21.    Debtors**

The term "Debtors" means the Plan Proponents Mission Real Associates, LLC, Bundy

Dimes, LLC and Bunwil Capital, LLC.

**22.    Debtors' Counsel**

The term "Debtors' Counsel" means Danning, Gill, Diamond & Kollitz, LLP, the general

bankruptcy counsel employed by the Debtors in the Chapter 11 Cases.

**23.    Debtors-in-Possession**

The term "Debtors-in-Possession" means the Debtors in their capacity as debtors-in-

possession in the Chapter 11 Cases pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

**24.    Dimes**

The term "Dimes" means the Bankruptcy Estate of <u>Dimes, LLC</u>, Chapter 11 Case No. 2:09-

bk-25517-BR.

**25.    Disallowed Claim or Interest**

The term "Disallowed Claim" or "Disallowed Interest" means a Claim or Interest, or any

portion thereof, that (a) has been disallowed by a Final Order, (b) is Scheduled at zero or as

contingent or disputed or unliquidated and as to which a proof of Claim or Interest has not been

timely filed or deemed timely filed, or (c) is not Scheduled and as to which a proof of Claim or

Interest has not been timely filed or deemed timely filed.

**26.    Disbursing Agent**

The term "Disbursing Agent" means R. Todd Neilson, the appointed Disbursing Agent of

the Debtors hereunder, or any successor appointed by the Court.

**27.    Disclosure Statement**

The term "Disclosure Statement" means the written disclosure statement that relates to this

Plan, as such disclosure statement has been or may be amended, modified or supplemented from

time to time.

**28.    Disputed**

The term "Disputed" means, with reference to any Claim, or Interest, or any portion thereof,

that is neither an Allowed Claim or Interest, nor a Disallowed Claim or Interest, as the case may be,

-10-

1 and includes, without limitation, Claims or Interests that (a) have been Scheduled as Disputed or

2 unknown or contingent or unliquidated, whether or not such Claims or Interests are the subject of a

3 proof of Claim or proof of Interest, (b) are the subject of a proof of Claim or Interest that differs in

4 nature, amount or priority from the Schedules, or (c) are the subject of an objection filed with the

5 Bankruptcy Court, which has not been withdrawn or overruled by a Final Order of the Bankruptcy

6 Court.

7     **29.**    **Disputed Claims Reserve**

8     The term "Disputed Claims Reserve" means the reserve established in accordance with

9 Section III(D)(6) of this Plan.

10     **30.**    **Disputed Claims Reserve Account**

11     The term "Disputed Claims Reserve Account" means a deposit account, interest bearing if

12 possible, opened by the Disbursing Agent at an F.D.I.C. insured depository institution into which

13 shall be deposited Cash sufficient to fund the Disputed Claims Reserve.

14     **31.**    **Distribution**

15     The term "Distribution" means a distribution to a Holder of an Allowed Claim or Interest

16 pursuant to this Plan.

17     **32.**    **Effective Date**

18     The term "Effective Date" means the fifteenth day following the occurrence of all of the

19 following conditions: (1) the Confirmation Order in a form satisfactory to the Debtors shall have

20 become a Final Order; and (2) all other actions and documents necessary to implement the

21 treatment of creditor Claims shall have been effected or executed or, if waivable, waived by the

22 Debtors.

23     If (1) a stay of the Confirmation Order is in effect and/or (2) all conditions to the Effective

24 Date have not been satisfied or, if waivable, not waived by the Debtors, the Effective Date shall be

25 extended to the first Business Day on which no such stay is in effect and/or all such conditions

26 have been satisfied or waived, as applicable.

27 ///

28 ///

-11-

361460.02 [XP]   25431

**33.    Estates**

The term "Estates" means the estates created in the Chapter 11 Cases under Section 541 of the Bankruptcy Code.

**34.    Federal Judgment Rate**

The term "Federal Judgment Rate" means the interest rate on federal judgments and is based on the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the first day on which the defendant is liable for interest.

**35.    File or Filed**

The term "File" or "Filed" means filed with the Clerk of the Bankruptcy Court in the Chapter 11 Cases.

**36.    Final Decree**

The term "Final Decree" means an order entered by the Bankruptcy Court closing the Chapter 11 Cases after substantial consummation of the Plan.

**37.    Final Order**

The term "Final Order" means an order or judgment of the Court as entered on the Docket in the Chapter 11 Cases, or other court of competent jurisdiction, the operation or effect of which has not been stayed, reversed or amended, and as to which order or judgment (or any revision, modification, or amendment thereof) the time to appeal or seek review or rehearing has expired and as to which no appeal or petition for review or rehearing was filed or, if filed, remains pending.

**38.    General Unsecured Claim**

The term "General Unsecured Claim" means any Claim that is not an Administrative Claim, Priority Claim, Tax Claim, or Secured Claim.

**39.    Holder**

The term "Holder" means the holder of a Claim or Interest.

**40.    Impaired**

The term "Impaired" means, when used in reference to a Claim or Interest, a Claim or Interest that is impaired within the meaning of Section 1124 of the Bankruptcy Code.

-12-

361460.02 [XP]    25431

**41.**  **Insider**

The term "Insider" has the meaning set forth in Section 101(31) of the Bankruptcy Code.

**42.**  **Interest**

The term "Interest" means an equity security, as defined in Bankruptcy Code Section 101(16).

**43.**  **Local Bankruptcy Rules**

The term "Local Bankruptcy Rules" means the local rules of the Bankruptcy Court, as applicable from time to time in the Chapter 11 Cases.

**44.**  **Namco**

The term "Namco" means and refers to the Namco Capital Group, Inc., a California corporation, and the bankruptcy estate thereof, which case is pending in the United States Bankruptcy Court for the Central District of California, Los Angeles Division, Case No. 2:08-bk-32333-BR.

**45.**  **Namvar Trustee**

The term "Namvar Trustee" means and refers to R. Todd Neilson, the Chapter 11 Trustee of the bankruptcy estate of Ezri Namvar, which case is pending in the United States Bankruptcy Court for the Central District of California, Los Angeles Division, Case No. 2:08-bk-32349-BR

**46.**  **Order**

The term "Order" means an order or judgment of the Court as entered on the Docket.

**47.**  **Person**

The term "Person" means any individual, corporation, general partnership, limited partnership, limited liability partnership, limited liability company, association, joint stock company, joint venture, government or political subdivision, official committee appointed by the United States Trustee, unofficial committee of creditors or equity holders, or other entity.

**48.**  **Petition Date**

The term "Petition Date" means March 31, 2010, the date on which the Debtors filed voluntary petitions for relief commencing the Chapter 11 Cases.

///

-13-

49.  **Plan**

The term "Plan" means the Chapter 11 Plan as it may be amended or modified, from time to time, together with all addenda, exhibits, schedules, supplements or other attachments, if any.

50.  **Priority Claim**

The term "Priority Claim" means an Allowed Claim entitled to priority under Sections 507(a)(3) through 507(a)(8) of the Bankruptcy Code, and includes Priority Tax Claims.

51.  **Priority Tax Claim**

The term "Priority Tax Claim" means any unsecured Claim of a governmental unit of the kind specified in Sections 502(i) and 507(a)(8) of the Bankruptcy Code.

52.  **Proceeds**

The term "Proceeds" means any Cash obtained by the Estates through the liquidation of the Wilshire Bundy Property.

53.  **Professional**

The term "Professional" means (a) a Person retained or to be compensated pursuant to Bankruptcy Code Sections 326, 327, 328, 330, 331, 503(b)(2), 1103 and/or 1107(b), or (b) an accountant, attorney, appraiser, auctioneers, Claims administrator, real estate brokers, or other professional employed by the Disbursing Agent, if any, on or after the Effective Date.

54.  **Reorganized Debtors**

The term "Reorganized Debtors" means Mission Real Associates, LLC, Bundy Dimes, LLC and Bunwil Capital, LLC as of the Effective Date and thereafter.

55.  **Reserved Claims**

The term "Reserved Claims" means all causes of action and Claims held by or capable of assertion by the Debtors or their Estates, including, without limitation, all Avoidance Actions, all Section 510 actions, suits, accounts, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment and Claims, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, and whether asserted or assertable, directly or derivatively, that the Debtors or their Estates could assert immediately prior to the Effective Date, but excludes all

-14-

361460.02 [XP]    25431

1  such causes of action, Claims or defenses released, waived or extinguished by the Debtors pursuant

2  to the Plan or a Final Order of the Bankruptcy Court.

3      **56.    Scheduled**

4      The term "Scheduled" means set forth on the Schedules filed by the Debtors in the

5  Chapter 11 Cases.

6      **57.    Schedules**

7      The term "Schedules" means the schedules of assets and liabilities filed by the Debtors

8  pursuant to Section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, including any

9  amendments and modifications thereto through the Confirmation Date.

10      **58.    Secured Claim**

11      The term "Secured Claim" means any Claim secured by Collateral to the extent of the value

12  of such collateral, as determined in accordance with Section 506(a) of the Bankruptcy Code, or, in

13  the event that such Claim is subject to setoff under Section 553 of the Bankruptcy Code, to the

14  extent of such setoff.

15      **59.    Surplus**

16      The term "Surplus" means the Cash in the Estates after Distributions have been made on

17  account of Allowed Claims, other than Cash in the Disputed Claims Reserve Account.

18      **60.    Unclaimed Distributions**

19      The term "Unclaimed Distributions" means any distribution to a Creditor made pursuant to

20  the Plan, but which is unclaimed, including distributions which have been returned as undeliverable

21  without a proper forwarding address, or which were not mailed or delivered because of the absence

22  of a proper address for such Creditor.

23      **61.    Unimpaired**

24      The term "Unimpaired" means with reference to a Class of Claims or Interests, that the

25  Class is not Impaired.  An Unimpaired Class is not entitled to vote on the Plan.

26      **62.    Unsecured Claim**

27      The term "Unsecured Claim" means any Claim that is not an Administrative Claim, Priority

28  Claim, Tax Claim, or Secured Claim.

-15-

63.    **U.S. Trustee**

The term "U.S. Trustee" means the Office of the United States Trustee for the Central District of California.

64.    **Wilshire Bundy Property**

The term "Wilshire Bundy Property" means that certain property located at Wilshire Bundy Plaza, 12121 Wilshire Boulevard, Los Angeles, California including the fee and ground leasehold interest, and all improvements thereon.

**B.    RULES OF INTERPRETATION & COMPUTATION OF TIME**

1.    **Defined Terms**

Any term used in the Plan that is not defined in the Plan, either in Article II, Section A. (*Definitions*) or elsewhere, but that is used in the Bankruptcy Code, the Bankruptcy Rules or the Local Bankruptcy Rules, shall have the meaning assigned to that term in the Bankruptcy Code, the Bankruptcy Rules or the Local Bankruptcy Rules, as the case may be.

2.    **Rules of Interpretation**

For purposes of the Plan: (a) whenever it appears appropriate from the context, each term, whether stated in the singular or the plural, shall include both the singular and the plural; (b) any contract, instrument, release or other agreement or document entered into by a Debtor in connection with the Plan which refers to "being in a particular form" or "on particular terms and conditions" means that such document shall be substantially in such form or substantially on such terms and conditions; provided, however, that any change to such form, terms, or conditions which is material to a party to such document shall not be made without such party's consent or an order of the Court; (c) any reference in the Plan to an existing document or exhibit Filed or to be Filed means such document or exhibit, as it may have been or (to the extent otherwise permitted, hereafter) may be amended, modified or supplemented from time to time; (d) unless otherwise specified in a particular reference, all references in the Plan to paragraphs, Articles and Exhibits are references to paragraphs, Articles and Exhibits of or to the Plan; (e) the words "herein," "hereof," "hereto," "hereunder" and others of similar import refer to the Plan in its entirety rather than to only a particular portion of the Plan; (f) captions and headings to Articles and paragraphs are

-16-

1   inserted for convenience of reference only and are not intended to be a part of or to affect the

2   interpretations of the Plan; (g) the rules of construction set forth in Section 102 of the Bankruptcy

3   Code shall apply; and (h) all exhibits to the Plan are incorporated into the Plan, and shall be

4   deemed to be included in the Plan, provided that they are Filed no later than the commencement of

5   the Confirmation Hearing.

6       **3.    Time Periods**

7           In computing any period of time prescribed or allowed by the Plan, the provisions of

8   Bankruptcy Rule 9006(a) shall apply.

9

10                                     **III.**

11                   **PRE-PETITION FACTUAL BACKGROUND**

12  **A.    Description of the Debtors' Businesses**

13          The Debtors are three of eight Limited Liability Companies each of which owned an

14  interest in the Wilshire Bundy Property.  Situated on the northwest corner of Wilshire Boulevard

15  and Bundy Drive in the Brentwood District of Los Angeles, the Wilshire Bundy Property

16  comprises approximately 1.02 acres of land and a Class A 14 story office building with more than

17  307,000 square feet of office space.

18          The fee interest in one of the parcels constituting the land portion of the Wilshire Bundy

19  Property was owned by three limited liability companies as tenants in common:  Bundy Dimes,

20  LLC,  which owns a 67% interest in the land; Bunherst, LLC, which owns an 18% interest; and

21  Tribun, LLC, which owns a 15% interest (collectively, the Land Owners").  The Land Owners

22  leased this portion of the land, pursuant to a ground lease, to five limited liability companies that

23  owned the improvements and the fee interest in the other parcels which constituted the land portion

24  of the Property:  Civic Palm, LLC, which owns a 17.3% interest in the improvements; Mission

25  Real, which owns a 52% interest; Wilbun 7, LLC, which owns a 14.7% interest; Wilshire Bundy

26  Holdings, LLC, which owned a 15% interest; and Bunwil Capital, LLC,  which owned a 1%

27  interest (collectively, the "Building Owners" and together with the Land Owners, the "Property

28  Owners").  The Property was managed by Pentaco Management, Inc. ("Pentaco").  Mission Real,

-17-

1  Bunwil and the other Building Owners were collectively responsible for the building's operations.

2  The only assets of the TIC Debtors are their respective interests in the Wilshire Bundy Property and

3  inter-company accounts receivables.

4  **B.    Principals/Affiliates of the Debtors**

5        Ezri Namvar ("Namvar")[1] owns a 91.5% membership interest in Mission Real and his

6  brother, Tony Namvar, owns 7.5%.  Mission Real Manager, LLC owns a 1% membership interest

7  in and is the managing member of Mission Real.  R. Todd Neilson is the successor member and

8  manager of Mission Real Manager, LLC.  Namvar owns a 50% membership interest in Dimes,

9  LLC ("Dimes"), which owns a 100% interest in WN Birdview LLC, which is the sole member of

10  Bunwil.  Louis A. Cicalese, LLC is the manager of Bunwil.  Dimes is the sole member of Bundy.

11  Louis A. Cicalese, LLC is the manager of Bundy.  The Interests of the Interest Holders are subject

12  to assignments and charging liens, some of which are potentially avoidable by the Namvar estate

13  and Dimes, as explained in Article V, Section D-8, below.

14  **C.    Claims Against the Debtors**

15        The Debtors are three of over 100 limited liability companies (collectively the "LLCs")

16  directly or indirectly owned by Namvar, Namvar's family members and/or related LLCs.   Most or

17  all of the LLCs each own, either directly or through other entities, interests in one or more parcels

18  of real property.

19        The Debtors' unsecured, non-priority creditors primarily consist of disputed litigation

20  claims related to the Wilshire Bundy Property in which one or more of the TIC Debtors were

21  named as defendants or cross-defendants along with other LLCs in actions commenced in the

22  Superior Court for the County of Los Angeles, inter-company loans from other LLCs; and claims

23  based upon security deposits from tenants of the Wilshire Bundy Property.[2]  In addition, there are

24

---

25  [1]    On December 22, 2008, petitioning creditors of Namvar filed an involuntary petition for relief under chapter 11 of
       the Code. Namvar consented to the entry of the order for relief on or about January 29, 2009, and the order for
26     relief was entered. On March 11, 2009, the Court entered an order approving the employment of R. Todd Neilson,
       as Chapter 11 Trustee of Namvar.

27  [2]    The claims based upon security deposits have been assumed by the Buyer of the Wilshire Bundy Property and as
       such are not included in the Liquidation Analysis attached hereto, marked as Exhibit "A".

28

-18-

1  administrative claims (other than professional claims) stemming from post-petition loans connected

2  to the Wilshire Bundy Property from certain related entities, which transactions were approved by

3  orders of this Court.  The Debtors do not believe that any general unsecured claims exist against

4  them from investors or creditors of Namvar or other LLCs, other than those litigation claims

5  generally described above which are disputed.

6  **D.      Events Leading to Chapter 11 Filing**

7          On March 18, 2010, R. Todd Neilson, in his capacity as Chapter 11 Trustee for Namvar (the

8  "Namvar Trustee"), filed his Motion for an Order (A) Approving Sale Procedures and Bid

9  Protections, Including Break-Up Fee and Contingent Expense Reimbursement, In Connection With

10  the Sale of the Land and Building Located at Wilshire Bundy Plaza; (B) Scheduling an Auction and

11  a Hearing to Consider Approval of Sale; (C) Approving Notice of Auction and Hearing on

12  Approval of Sale; (D) Approving the Purchase and Sale Agreement With the Stalking Horse

13  Bidder; (E) Approving the Procedures for the Assumption and Assignment of Leases and

14  Contracts; and (F) Granting Related Relief filed in the Namvar Case (the "Sale Procedures

15  Motion").   The Sale Procedures Motion sought to set procedures for an auction of the Wilshire

16  Bundy Property subject to Bankruptcy Court approval, free and clear of all liens, claims and

17  interests with the same to attach to the net sale proceeds with the same force and effect.

18          The Debtors filed the Bankruptcy Cases as a result of the shortfall in income generated by

19  the Wilshire Bundy Property to pay taxes and other expenses to which the Debtors are liable, in an

20  effort to maximize the value of the Debtors' sole asset, their interests in the Wilshire Bundy

21  Property, for the benefit of the Estates and their creditors, and in order to protect the equity in their

22  interests in the Wilshire Bundy Property from claims of Disputed Creditors that asserted rights to

23  foreclose equitable liens on the Wilshire Bundy Property, to attach the rents from the Wilshire

24  Bundy Property, and to assert other liens and interests in the Wilshire Bundy Property.

25  **E.      Significant Events Subsequent to Bankruptcy Filing**

26          On April 1, 2010, the Debtor Mission Real filed a Complaint against Civic Palm, LLC,

27  Wilbun 7, LLC, Wilshire Bundy Holdings, LLC, and Bunwil Capital, LLC for an order authorizing

28  the Debtor to sell both the interest of the estate and co-owners in the Wilshire Bundy Property

-19-

1  pursuant to Section 363(h) of the Bankruptcy Code. The filing of the complaint initiated Adversary

2  Proceeding No. 10-ap-01637-BR (the "363(h) Action").

3      On April 6, 2010, the Court entered an Order granting the Sale Procedures Motion. On or

4  about April 8, 2010, the Namvar Trustee and the Debtors filed a Joint Motion for an Order (A)

5  Approving the Sale of the Land and Building Located at Wilshire Bundy Plaza Free and Clear of

6  Certain Liens, Claims, Interests, and Encumbrances; (B) Authorizing Distribution of the Sale

7  Proceeds to the Trustee; (C) Authorizing the Trustee to Pay Certain Costs of Sale and Commission;

8  (D) Authorizing the Assumption and Assignment of Contracts and Leases; and (E) Granting

9  Related Relief (the "Sale Motion"). An auction was held on May 11, 2010, upon which the

10  winning bidder was DEI X Partnership REIT, LP at the sale price of $111,000,000.

11      A hearing was conducted on May 12, 2010 at 10:00 a.m. on the Sale Motion. Concurrently

12  therewith, a hearing was held on the Debtor's Motion for Summary Judgment on the 363(h) Action

13  (the "Summary Judgment Motion"). The Court initially denied the Summary Judgment Motion,

14  but subsequently set a trial date of August 23, 2010 at 10:00 a.m. on the 363(h) Action along with

15  related deadlines and continued the hearing on the Sale Motion to that date. At the trial, the Court

16  ruled in favor of Bundy and Mission Real and against the defendants. On September 1, 2010, the

17  Court entered judgment authorizing Bundy and Mission Real to sell both the interests of the

18  Debtors' estates and of defendants. An order approving the sale was entered on September 21,

19  2010. The sale closed on or about October 28, 2010. The sale proceeds have not yet been

20  distributed among the Property Owners. The Debtors are preparing motions to distribute the

21  proceeds among the respective entities pursuant to an accounting, which the Debtors anticipate

22  being filed and resolved prior to the Confirmation Hearing.

23  F.    **Employment of Professionals**

24      On or about June 1, 2010, the Court entered an Order authorizing the employment of

25  Danning, Gill, Diamond & Kollitz, LLP as general bankruptcy counsel to the Debtors. On or about

26  October 27, 2010, the Court entered an Order authorizing the employment of Pachulski Stang Ziehl

27  & Jones, LLP as Special Counsel pursuant to 11 U.S.C. § 327(e).

28  ///

-20-

361460.02 [XP]    25431

# IV.

## SUMMARY OF THE PLAN OF REORGANIZATION

As required by the Bankruptcy Code, the Plan classifies Claims and Interests in various Classes according to their right to priority. In addition, the Plan also sets forth how each Class of Claims and Interests will be treated thereunder, and whether or not this treatment results in a Class of Claims or Interests being "Impaired" or "Unimpaired". This latter distinction is of critical importance because only Impaired Classes of Claims are entitled to vote on the Plan. Since this subject area is already addressed in detail in the Plan, it will only be summarized in this Disclosure Statement. Each claimant should carefully read the entirety of the Plan to obtain an understanding of how his or her Claim is classified and treated.

# V.

## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

**A.   General Overview**

As required by the Bankruptcy Code, the Plan classifies claims and interests in various classes according to their right to priority of payments as provided in the Bankruptcy Code. The Plan states whether each class of claims or interests is impaired or unimpaired. The Plan provides the treatment each class will receive under the Plan.

**B.   Unclassified Claims**

Certain types of claims are not placed into voting classes; instead they are unclassified. They are not considered impaired and do not vote on the Plan because they are automatically entitled to specific treatment provided for them in the Bankruptcy Code. As such, the Plan Proponents have not placed the following claims in a class. The treatment of these claims is provided below.

    1.    **Administrative Claims**

All requests for payment of Administrative Claims, except for the Claims of Professionals, must be filed with the Bankruptcy Court and served on the Debtors' Counsel and the U.S. Trustee on or before sixty (60) days after the Effective Date. Any Person who fails to file a request for

-21-

1  payment of an Administrative Expense Claim in accordance with the Plan shall be forever barred

2  from asserting such Claim against the Debtors or the Estates and shall receive no Distribution

3  under the Plan.

4      The following chart lists the Debtors' § 507(a)(1) administrative claims and their treatment

5  under this Plan.

| Name | Estimated Amount Owed | Treatment |
|---|---|---|
| Danning, Gill, Diamond & Kollitz, LLP (Debtors' Bankruptcy Counsel) | $250,000 | Allowed amounts will be paid in full after the Court enters an order authorizing payment of fees and costs. Allowed amounts will be paid as soon as practicable the later of: (i) the Effective Date; or (ii) the date of entry of the Order allowing such fees and costs; or (iii) such date as the Debtors and the claimant might otherwise agree. |
| Pachulski Stang Ziehl & Jones LLP (Debtors' Special Litigation Counsel) | $350,000 | Allowed amounts will be paid in full after the Court enters an order authorizing payment of fees and costs. Allowed amounts will be paid as soon as practicable the later of: (i) the Effective Date; or (ii) the date of entry of the Order allowing such fees and costs; or (iii) such date as the Debtors and the claimant might otherwise agree. |
| Reserve for additional professional fees through Effective Date | $200,000 | Allowed amounts will be paid in full after the Court enters an order authorizing payment of fees and costs. Allowed amounts will be paid as soon as practicable the later of: (i) the Effective Date; or (ii) the date of entry of the Order allowing such fees and costs; or (iii) such date as the Debtors and the claimant might otherwise agree. |
| U.S. Trustee Fees | $Unknown | Paid in full on Effective Date |
| Clerk's Office Fees | $Unknown | Paid in full on Effective Date |
| **TOTAL** | $800,000 | |

24      The Court must approve all professional fees listed in this chart.  For all fees except Clerk's

25  Office fees and U.S. Trustee's fees, the Professional in question must file and serve a properly

26  noticed fee application and the Court must rule on the application prior to allowance or payment.

27  Only the amount of fees allowed by the Court will be required to be paid under this Plan.

28  ///

361460.02 [XP]     25431

### 2. Post-Confirmation U.S. Trustee Fees

Pursuant to 28 U.S.C. § 1930(a)(6), quarterly fees to the U.S. Trustee will continue to be due until the Chapter 11 Cases are closed, dismissed or converted to Chapter 7, at the rate in effect at the time such fees are due.

### 3. Ordinary Course Liabilities

Holders of administrative claims based on liabilities incurred in the ordinary course of the Debtors' activities/businesses shall not be required to file any request for payment of such claims. Such administrative claims shall be paid by the Debtors in the ordinary course of business pursuant to the terms and conditions of the particular transactions giving rise to such administrative claims, without any further action by the holders of such claims. Any dispute with respect to ordinary course liabilities shall be submitted to the Bankruptcy Court for resolution unless resolved by agreement of the parties.

### 4. Priority Tax Claims

Priority tax claims are certain unsecured income, employment and other taxes described by Code Section 507(a)(8). The Code requires that each holder of such a 507(a)(8) Priority Tax Claim receive the present value of such claim in deferred cash payments, over a period not exceeding six years from the date of the assessment of such tax.

As set forth below, each entity holding an allowed claim entitled to priority under Section 507(a)(8) shall receive deferred cash payments equal to the allowed amount of such claim.

The following chart lists <u>all</u> of the Debtors' Section 507(a)(8) priority tax claims[3] and their treatment under this Plan.

| Description | Amount Owed | Treatment |
|---|---|---|
| • Name = Internal Revenue Service<br>• Type of Tax = income tax<br>• Date tax assessed = | Unknown | • Pymt interval = n/a<br>• Pymt amt = $<br>• Begin Date = Effective Date |

[3] These amounts exclude penalties assessed on pre-petition taxes owed, which are subordinate pursuant to 11 U.S.C. § 507(a)(8)(G).

-23-

| Description | Amount Owed | Treatment |
|---|---|---|
| | | • End Date = Effective Date<br>• Interest rate = 0%<br>• Total payout = 100%<br>• Treatment of Lien = Unimpaired |
| • Name = State of California Franchise Tax Broad<br>• Type of Tax = Income Tax<br>• Date tax assessed = | $13,175.77 | • Pymt interval = N/A<br>• Pymt amt = $13,175.77<br>• Begin Date = Effective Date<br>• End Date = Effective Date<br>• Interest rate = 0%<br>• Total payout = 100%<br>• Treatment of Lien = Unimpaired |

## C.    Classified Claims and Interests

### 1.    Classes of Secured Claims

The following chart lists all classes containing Debtors' Secured Claims and their treatment under this Plan:

| Class# | Description | Insiders (Y/N) | Impaired | Treatment |
|---|---|---|---|---|
| 1 | Disputed Secured Claims of:<br>• Names: Boyle Avenue, LLC; Brickwalk, LLC; Robert Hanasab; Rolling Hills Capital, LLC; Safeco Holding Corp.; Starpoint Properties, LLC<br>• Collateral description: Alleged equitable lien on Wilshire Bundy Property<br>• Scheduled Value of Collateral = $99,500,000<br>• Priority of security interest = unknown<br>• Principal owed = n/a<br>• Disputed Secured Claim as of Petition Date = $5,000,000 (Claimants allege joint and several liability) | N | Unimpaired; Claims in this Class are not entitled to vote on Plan; Class is deemed to have accepted the Plan. | Debtors shall reserve an amount sufficient to pay this Disputed Secured Claim in full, plus interest.  Claim shall be paid upon entry of a Final Order determining the validity of the lien and the underlying claim, if any, in full satisfaction, settlement, release, discharge of, and in exchange for such Allowed Claim. |

-24-

361460.02 [XP]    25431

| 2 | Disputed Secured Claim of:<br>• Name: Khalil Varastehpour<br>• Collateral description: Alleged constructive trust or equitable lien on Wilshire Bundy Property<br>• Scheduled Value of Collateral = $99,500,000<br>• Priority of security interest = unknown<br>• Principal owed = n/a<br>• Disputed Secured Claim as of Petition Date = $350,000 | N | Unimpaired; Claims in this Class are not entitled to vote on Plan; Class is deemed to have accepted the Plan. | Debtors shall reserve an amount sufficient to pay Disputed Secured Claim in full, plus interest. Claim shall be paid upon entry of a Final Order determining the validity of the lien and the underlying claim, if any, in full satisfaction, settlement, release, discharge of, and in exchange for such Allowed Claim |

## 2.    **Class of General Unsecured Claims**

The following chart identifies this Plan's treatment of the class containing all of Debtors' general unsecured claims:

| Class# | Description | Impaired (Y/N) | Treatment |
|---|---|---|---|
| 3 | General Unsecured Claims | Unimpaired; Claims in this Class are not entitled to vote on Plan; Class is deemed to have accepted the Plan. | Each holder of an Allowed Class 3 Claim shall receive from the Reorganized Debtor, in full satisfaction, settlement, release, discharge of, and in exchange for such Allowed Claim, Cash equal to the amount of such Allowed Claim, plus interest at the Federal Judgment Rate, on, or as soon as reasonably practicable after, the latest of (a) the Effective Date, or (b) the date after such Claim becomes an Allowed Claim |

## 3.    **Class of Interest Holders**

The following chart identifies this Plan's treatment of the Class of Interest Holders:

| Class# | Description | Impaired (Y/N) | Treatment |
|---|---|---|---|
| 4A | Mission: Namvar Trustee (91.5%); Tony Namvar (7.5%); Mission Real Manager, LLC (1%) | Impaired; Interests in this Class are entitled to vote on Plan. | The Disbursing Agent shall distribute the Mission Surplus to Interest Holders in accordance with their respective interests and as provided in Sections III(D)(7) and (D)(8) below. |

-25-

361460.02 [XP]      25431

| | | | | The Disbursing Agent shall reserve distributions on account of Competing Equity Claims pending further Court Order, and following entry of a Final Order or Orders, will distribute said Interests in accordance therewith and as provided in Article III, Sections (D)(7) and (D)(8) below. |
|---|---|---|---|---|
| 4B | Bundy: 100% owned by Dimes | Impaired; Interests in this Class are entitled to vote on Plan. | | The Disbursing Agent shall distribute the Bundy Surplus to Interest Holders in accordance with their respective interests and as provided in Sections III(D)(7) and (D)(8) below. The Disbursing Agent shall reserve distributions on account of Competing Equity Claims pending further Court Order, and following entry of a Final Order or Orders, will distribute said Interests in accordance therewith and as provided in Article III, Sections (D)(7) and (D)(8) below. |
| 4C | Bunwil: 100% owned by WN Birdview, LLC | Impaired; Interests in this Class are entitled to vote on Plan. | | The Disbursing Agent shall distribute the Bunwil Surplus to Interest Holder in accordance with its interest and as provided in Sections III(D)(7) and (D)(8) below. The Disbursing Agent shall reserve distributions on account of Competing Equity Claims pending further Court Order, and following entry of a Final Order or Orders, will distribute said Interest in accordance therewith and as provided in Article III, Sections (D)(7) and (D)(8) below. |

## D. Means of Performing the Plan

### 1. Funding for the Plan

The Plan will be funded by: (a) Proceeds from the sale of the Wilshire Bundy Property; (b) Cash on hand in the Estates as of the Effective Date of the Plan; and (c) from the liquidation of any non-Cash Property of the Estate not abandoned pursuant to Article IV, Section F of the Plan.

### 2. Post-Confirmation Management

R. Todd Neilson will continue to manage Mission post-confirmation. Louis A. Cicalese, LLC will continue to manage Bunwil and Bundy post-confirmation.

### 3. Disbursing Agent

R. Todd Neilson shall be the Disbursing Agent for the Debtors for the purpose of making distributions to Creditors under the Plan. The Disbursing Agent shall serve without bond and shall

361460.02 [XP]   25431

1  receive reasonable compensation and reasonable out-of-pocket expenses for distribution services

2  rendered pursuant to the Plan.

3      **4.**    **Claims/Interests**

4      Notwithstanding any other provisions of this Plan, Distribution(s) shall not be made under

5  this Plan on account of any Disputed Claim or Disputed Interest until the Claim or Interest is

6  allowed by a Final Order, but appropriate reserves shall be established into which the objectionable

7  claimant's dividend shall be deposited. The amount to be so deposited shall be the full amount

8  claimed unless the Bankruptcy Court fixes some other amount on notice to the affected party[ies].

9      **5.**    **Objections to Claims and/or Interests**

10      The Reorganized Debtors shall review all Claims and Interests filed or deemed filed, and

11  may object to or seek a subordination of any Claims and/or Interests filed or scheduled herein. All

12  objections to claims shall be filed with the Bankruptcy Court and served on all parties entitled to

13  service thereof no later than 180 days after the Effective Date, except as such time period may be

14  extended by agreement between the Debtors and the claimant, or by order of the Bankruptcy Court.

15      If a creditor or interest holder desires to object to or seek subordination of any Claim or

16  Interest, the creditor or interest holder shall first make written demand that the Reorganized

17  Debtors object, and, if the Reorganized Debtors decline to object, or if they fail to agree to object

18  within 30 days of the demand upon it, the creditor or interest holder may object to or seek

19  subordination of any Claim or Interest.

20      **6.**    **Claims Bar Date and Disallowance of Late-Filed Claims**

21      The Court established a Claims Bar Date of December 1, 2010 for filing proofs of claim on

22  account of pre-petition Claims and Administrative Claims, other than with regard to Administrative

23  Claims of professionals. Any Claim (other than Administrative Claims of professionals) filed after

24  the Claims Bar Date of December 1, 2010 shall be Disallowed and the Holder of such a Disallowed

25  Claim shall not receive any distributions on account of such Disallowed Claim.

26      **7.**    **Disputed Claims Reserve**

27      On the Effective Date, the Disbursing Agent shall deposit into the Disputed Claims Reserve

28  Account Distributions for any Disputed Claims based on the assumption that all such disputed

-27-

1 items will be allowed in full, unless the Bankruptcy Court orders that a smaller reserve is sufficient.

2 If the Court so orders, any Claimant whose Claim is so estimated shall have recourse only to the

3 reserve established by the Bankruptcy Court for such Claimant's Disputed Claim, and not to the

4 Reorganized Debtor, the Estate, the Disbursing Agent, or any Person receiving property or

5 Distributions under the Plan, even if the Allowed Claim of such Claimant exceeds the maximum

6 estimation of such claim.  Thus, the Bankruptcy Court's estimation of a Disputed Claim will limit

7 the Distribution to be made thereon, regardless of the amount finally allowed on account of such

8 claim.  All interest, dividends, and profits earned in the Disputed Claims Reserve Account shall be

9 property of the Estate and shall accrue for the benefit of the Estate, and no Holder of any Claim or

10 any Disputed Claim shall have any rights in such interest, dividends, or profits, except as provided

11 in the Plan.

12      **8.**    **Distribution of Surplus**

13      Debtors shall make Distributions of Surplus on the Effective Date to the following Interest

14 Holders which Interests are not subject to Competing Equity Claims:  Namvar Trustee (50.5% of

15 Mission) and Mission Real Manager, LLC (1% of Mission).

16      The following Interests are each the subject of Competing Equity Claim of Tony Namvar

17 (7.5% of Mission), W.N. Birdview (1% of Bunwil), Namvar Trustee (41% of Mission) and Dimes,

18 LLC (100% of Bundy):

19      **a.**    **Competing Equity Claims against Tony Namvar**

20      The Debtors are informed that Tony Namvar pledged his Interest in Mission to Starpoint

21 Properties, LLC, Robert Hansab, Rolling Hills Capital, LLC, Brickwalk, LLC, Safco Holding

22 Corporation, and Boyle Avenue, LLC, pursuant to a certain Security and Pledge Agreement dated

23 October 31, 2008.

24      Debtors have also received a demand from Nader & Sons and Sisko Enterprises that any

25 Distribution on Tony Namvar's Interest be paid directly to them, pursuant to a Notice of Ruling

26 entered on September 13, 2010 in the case of <u>Nader & Sons, LLC and Sisko Enterprises, LLC v.</u>

27 <u>Homayoun Namvar a/k/a/ Tony Namvar</u>, Superior Court of the State of California for the County

28 ///

1  of Los Angeles, Case No. SS 018783 (the "Nader/Sisko Charging Order"). Debtors take no

2  position as to the relative priority of these competing claims to Tony Namvar's Interest in Mission.

3          **b.**    **Competing Equity Claims against Ezri Namvar**

4        The Debtors are informed that Ezri Namvar pledged percentages of his Interest in Mission

5  as follows (collectively, the "Ezri Namvar Pledges"):

6                  (i)     David York was assigned a 16% interest in Mission as security in

7  respect of a promissory note from Namco in the principal amount of $3,000,000;

8                  (ii)    Brickwalk, LLC was assigned a 12.5% interest in Mission as security

9  in respect of a promissory note from Namco Financial Exchange, LLC in the principal amount of

10  $1,500,000; and

11                  (iii)   Rolling Hills, LLC was assigned a 12.5% interest in Mission as

12  security in respect of a promissory note from Namco Financial Exchange, LLC in the principal

13  amount of $1,500,000.

14        Debtors are informed that the Namvar Trustee will seek to avoid and recover the Ezri

15  Namvar Pledges pursuant to his "Avoiding Powers" arising under Code §§ 510, 542, 543, 544, 545,

16  547, 548, 549, 550, 552 and/or 553. Debtors take no position as to the relative priority of these

17  competing claims to the Namvar Trustee's Interest in Mission.

18          **c.**    **The Princeton Charging Orders**

19        Debtors are informed that on July 8, 2009, the Superior Court of the State of California, for

20  the County of Los Angeles entered a certain Charging Order against Dimes, LLC's Interests in

21  various Limited Liability Companies including but not limited to Dimes' interest in W.N.

22  Birdview, LLC (which is the sole member of Bunwil) in the case of <u>Princeton Holdings, LLC, v.</u>

23  <u>Namco Capital Group, Inc., et. al.</u>, Case No. BC400587 (the "California Princeton Charging

24  Order"). Debtors are informed that on May 22, 2009, the Superior Court of the State of Delaware,

25  for the County of New Castle entered a certain Charging Order against and Dimes, LLC's Interests

26  in various Limited Liability Companies including but not limited to Dimes' interest in Bundy, in

27  the case of <u>Princeton Holdings, LLC, v. Unitex Industries, Inc., et. al.</u>, Civil Action No. 09J-05-001

28  (the "Delaware Princeton Charging Order" and collectively, the "Princeton Charging Orders").

1  Dimes is a Debtor in Possession which case was initiated by the filing of an Involuntary Petition on

2  June 19, 2009 and order for relief was entered on July 10, 2010. Debtors are informed that Dimes

3  will seek to avoid and recover the Princeton Charging Orders pursuant to its "Avoiding Powers"

4  arising under Code §§ 510, 542, 543, 544, 545, 547, 548, 549, 550, 552 and/or 553. Debtors take

5  no position as to the relative priority of these competing claims to WN Birdview, LLC's Interest in

6  Bunwil or to Dimes' Interest in Bundy.

7       On the Effective Date, Debtors shall deposit into segregated Competing Equity Claims

8  Reserve Accounts Distributions of Surplus on account of Competing Equity Claims, pending

9  further order from the Court. Debtors reserve the right, but are not obligated, to file with the Court

10  a Complaint in Interpleader and interplead some or all of the Surplus Cash in the Competing Equity

11  Claims Reserve Account(s). In the event that any additional Competing Equity Claims are asserted

12  against the Interest(s) of Interest Holders prior to any Distribution on account of their Interests,

13  then the Disbursing Agent will deposit into the Competing Equity Claims Reserve Account(s) the

14  amount(s) therein asserted pending further order from the Court or will interplead the amounts as

15  the Disbursing Agent deems appropriate.

16  **9.    Additional Distributions**

17       **a.    Distributions on Disputed Claims that Become Allowed Claims**

18       If a Disputed Claim becomes an Allowed Claim in whole or in part, then within 21 days

19  following the allowance of such Claim by Final Order (or within such extended period as may be

20  provided by the Plan) or by agreement as provided in this Plan, the Disbursing Agent shall

21  distribute to the Claimant, out of the Disputed Claims Reserve Account, an amount equal to that

22  which such Claimant would have been entitled as Distribution pursuant to the Plan, without interest

23  except as otherwise provided in the Plan, and any subsequent Distributions made to Holders of

24  such Claims pursuant to the Plan.

25       If a Disputed Claim is Disallowed in whole or in part, then within 21 days following the

26  disallowance of such Claim by Final Order (or within such extended period as may be provided by

27  the Plan) or by agreement as provided in this Plan, the Disbursing Agent shall distribute from the

28  ///

-30-

1 Disputed Claims Reserve Account the amount reserved on account of said Disallowed Claim to

2 Interest Holders as provided in Section III(D)(7) above.

3       **b.**    **Final Distribution of Surplus**

4       After (a) all Disputed Claims are either allowed or disallowed pursuant to a Final Order or

5 agreement as provided in the Plan, and (b) all Post-Effective Date Claims, Administrative Expense

6 Claims (in the amounts allowed by the Bankruptcy Court), U.S. Trustee Fees, Allowed Priority

7 Wage Claims, Allowed Priority Tax Claims, and Allowed Claims in Classes 1 through 4 are paid or

8 satisfied in full according to the terms of this Plan, the Disbursing Agent shall make a final

9 determination of Surplus, taking into account the resolution of Disputed Claims, taxes incurred, but

10 not yet paid or expected to be incurred, Professionals' fees and expenses, Distributions previously

11 held as Unclaimed Property, and all interest earned on the Cash maintained in the Disputed Claims

12 Reserve Account not applied to reimburse the Disbursing Agent for his costs and expenses

13 pursuant to this Plan.  All such property shall be distributed to Interest Holders as provided in

14 Section III(D)(7) above.  Any Cash received by the Disbursing Agent after the final Distribution

15 shall be distributed pursuant to the Plan; provided, however, that if the expenses of such a

16 Distribution would exceed the amount to be distributed, the Distribution shall not be made and said

17 Cash shall be disposed of at the discretion of the Disbursing Agent.

18       **10.**    **Unclaimed Distributions**

19       After 180 days after the issuance of any check, security or certificate by the Disbursing

20 Agent, the Holder of any Allowed Claim entitled to such unclaimed property shall cease to be

21 entitled thereto, and such unclaimed property shall revert to the Reorganized Debtors and shall be

22 distributed in accordance with the Plan.

23 ///

24 ///

25 ///

26 ///

27 ///

28 ///

-31-

# VI.

## TREATMENT OF MISCELLANEOUS ITEMS

**A.**    **Executory Contracts and Unexpired Leases**

All unexpired leases relating to the Wilshire Bundy Property (including but not limited to the ground lease and the tenant leases) have been assumed and assigned to the Buyer. All other unexpired leases and executory contracts, if any, shall be deemed rejected on the Effective Date.

**B.**    **Retention of Jurisdiction**

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Court will retain such jurisdiction over the Chapter 11 Cases after the Effective Date to the full extent permitted by law, including, without limitation, jurisdiction to:

(1)    Allow, disallow, determine, liquidate, classify, subordinate, estimate or establish the priority or secured or unsecured status of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim, the resolution of any objections to the allowance or priority of Claims or Interests and the resolution of any dispute as to the treatment necessary to reinstate a Claim pursuant to the Plan;

(2)    Grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for periods ending before the Effective Date;

(3)    Resolve any matters related to the assumption or rejection of any executory contract or unexpired lease to which the Debtors are a party or with respect to which the Debtors may be liable, and to hear, determine and, if necessary, liquidate any Claims arising there from;

(4)    Ensure that distributions to Holders of Allowed Claims or Allowed Interests are accomplished pursuant to the provisions of the Plan;

(5)    Decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters and grant or deny any applications involving the Debtors, Reorganized Debtors or the Chapter 11 Cases that may be pending on the Effective Date;

(6)    Enter such Orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases, indentures and other agreements

-32-

361460.02 [XP]    25431